LAWRENCE GESMUNDO *v.* CLINTON G. BUSH ET AL.

MALTBIE, C J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

608

Argued April 1—decided May 9, 1947

*Francis F. McGuire,* for the appellants (defendants).

*Merrill S. Dreyfus,* for the appellee (plaintiff).

JENNINGS, J.   The defendants' appeal from an award of compensation for frostbite was dismissed by the Superior Court.   They appeal on the grounds that the statutory notice was not given, that the injury did not arise out of the employment and that

no causal connection between the injury and the plaintiff's disability was established.

The finding, as corrected by the commissioner, may be summarized as follows: The plaintiff was employed as a clerk by the named defendant, hereinafter referred to as the defendant. On the afternoon of December 31, 1943, no other driver was available and the defendant's superintendent sent the plaintiff with a loaded truck from Groton to Montowese. His truck was not equipped with a heater. The floor boards of the cab were broken and it was cold and drafty. It was a cold day and the temperature range was between 44 and 27 degrees. The plaintiff left Groton about 3:30 p.m., reached Montowese about 6 p.m., waited about an hour and a half and reached Groton on his return about 10 p.m. He was very cold on the way home and found it necessary to warm his hands by shaking them. When he got out of the truck on his return he felt that his feet were frozen and so reported to the watchman and superintendent. The next day was a holiday and the following day Sunday, so he did not report for work until Monday, January 3, 1944. At that time he reported to the superintendent that his feet were bothering him and the latter told him to consult Dr. Hewes, who attended injured employees of the defendant. Dr. Hewes made a diagnosis of frostbite and gave him instructions to follow. His condition did not improve. He continued to work and consulted various physicians, one of whom told him he might have an early Buerger's disease. He then went to the Lahey Clinic on June 8, 1944, which made a diagnosis that the disease was possibly present in an early form. The treatment recommended gave no relief. In November, 1945, the plaintiff was examined by Dr. Hildenbrand

of Washington, D. C., who made a diagnosis of a vasomotor disturbance of the causalgic type, probably related to his frostbite. He advised the plaintiff to stop work and the latter has not worked since. The plaintiff filed no written notice of claim for compensation or hearing within the year, nor was any hearing assigned or voluntary agreement entered into within that time. His failure to take these steps, although he was the clerk who would ordinarily file reports of compensable accidents, was due to the fact that in the beginning he did not believe his injury to be serious and that the later diagnosis of a possible Buerger's disease created a doubt that he had a compensable injury. The defendant insurer had medical examinations made of the plaintiff but the results were not introduced in evidence.

On these facts the commissioner concluded that the treatment by Dr. Hewes under the circumstances described dispensed with the necessity for written notice, that the plaintiff's ride exposed him to the danger of frostbite to a greater degree than the general public and that the injury was a frostbite of both feet which arose out of and in the course of his employment.

The importance of securing a correction of this finding was obvious to the defendant, and findings as to causation, based on the medical testimony, and as to notice were specifically attacked. The finding is further corrected by adding the undisputed facts that the plaintiff paid Dr. Hewes for his visit and that Dr. Hewes made no report of the visit or of his diagnosis. Otherwise, the evidence either directly or by reasonable inference supports the finding. *Stulginski* v. *Waterbury Rolling Mills Co.*, 124 Conn. 355, 357, 199 A. 653. The finding that the insurer with-

held the results of its own medical examinations may well have carried weight with the commissioner as a trier of the facts. *Ross* v. *Koenig,* 129 Conn. 403, 408, 28 A.2d 875. The examination of the evidence made necessary by the defendant's attack on this finding shows that the plaintiff made a real attempt to get these in evidence but was thwarted by the tactics of the defendant.

Written notice of the injury within one year is necessary to give the commissioner jurisdiction to hear the claim unless the case falls within one of the exceptions stated in the statute. General Statutes, Cum. Sup. 1935, § 1613c; *Walsh* v. *Waldron & Sons,* 112 Conn. 579, 584, 153 A. 298. No written notice was given in this case and the plaintiff claims under the exception which reads: ". . . if within said period of one year an employee shall have been furnished, for the injury with respect to which compensation is claimed, with medical or surgical care as provided in section 5232, no want of such notice of claim shall be a bar to the maintenance of proceedings. . . ." Section 5232 provides: "The employer . . . shall provide a competent physician or surgeon to attend the injured employee, and in addition shall furnish such medical and surgical aid or hospital service as such physician or surgeon shall deem reasonable or necessary." In § 5223, "Employer" is defined as follows: " 'Employer' shall mean any person, corporation . . . using the services of another for pay; it shall include also the legal representatives of any such employer."

This particular exception has not been construed in Connecticut. Beyond the rule of liberal construction with which the rights of the employee under the statute are treated (*Caldwell* v. *United States Alu-*

*minum Co.,* 131 Conn. 96, 99, 38 A.2d 6), there is little Connecticut precedent. The purpose of the notice is to inform the employer that an injury has been suffered upon which a claim for compensation will or may be founded. *Tolli* v. *Connecticut Quarries Co.,* 101 Conn. 109, 116, 124 A. 813. The exception is, no doubt, based upon the fact that if the employer furnishes medical treatment he must know that an injury has been suffered which at least may be the basis of such a claim. The injury in this case was reported to the defendant's superintendent, and he sent the plaintiff to a doctor who attended injured employees of the defendant. The commissioner has found that the superintendent had authority to take that action, and that finding is supported by the superintendent's testimony that he was instructed to do so. Declarations out of court by an agent as to his authority are not proper evidence to establish it; *Bailey* v. *Bobecki,* 117 Conn. 653, 654, 166 A. 677; but as a witness he may testify as to any facts relevant to show that authority. 1 Mechem, Agency (2d Ed.) § 291; Restatement, 2 Agency § 285, comment a. The act of the superintendent was in effect the act of the employer. *Stone* v. *Hills,* 45 Conn. 44, 47; *State* v. *Basserman,* 54 Conn. 88, 93, 6 A. 185. The examination by the doctor and the giving of instructions to the plaintiff constituted "medical treatment" as those words are used in the statute. To "furnish" means to "provide" or "supply." Webster's New International Dictionary (2d Ed.). That the plaintiff saw fit to pay the doctor does not alter the situation; it is the fact that the defendant, through its superintendent, made provision for medical treatment that makes unnecessary the formal notice. The commissioner could properly hold that the defendant fur-

nished such treatment within the meaning of the exception in the statute.

It would serve no useful purpose to enter into a detailed discussion of the evidence for the purpose of supporting the conclusion of the commissioner that the plaintiff was, at the time of the hearing, suffering from the results of the frostbite sustained by him on December 31, 1943. The claim of the defendant that the commissioner could not find that the plaintiff's feet were frozen on that evening is without merit. He has suffered continuously since that time and no other intervening cause of his condition has been proved. Dr. Hildenbrand attributes his present condition to the frostbite, possibly complicated by a circulatory disturbance which would make him more susceptible thereto. *LeLenko v. Wilson H. Lee Co.*, 128 Conn. 499, 504, 24 A.2d 253. The conclusion was one which the commissioner reasonably could reach. *Savage v. St. Aeden's Church*, 122 Conn. 343, 346, 189 A. 599.

The question remains: Did the injury arise out of the employment? It so happens that the early leading Connecticut case defining that phrase was also a frostbite case. *Larke v. Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 97 A. 320. As is there stated, an injury incurred during the employment ordinarily arises out of it. "An injury which is a natural and necessary incident or consequence of the employment, though not foreseen or expected, arises out of it." Id., p. 309. That decision makes clear (p. 310) that exposure of the type undergone by the plaintiff, an office worker, driving for so long a time in his unheated, drafty cab, was more severe than the exposure to which persons in that locality are ordinarily subject. The conclusion of the commissioner that

the injury arose out of the employment was one which he reasonably could reach. *Savage* v. *St. Aeden's Church,* supra; *Ahern* v. *Spier,* 93 Conn. 151, 154, 105 A. 340 (sunstroke); *Cunningham* v. *Donovan,* 93 Conn. 313, 315, 105 A. 622 (sunstroke); *De Luca* v. *Park Commissioners,* 94 Conn. 7, 11, 107 A. 611 (lightning); *Reynolds* v. *Rider Dairy Co.,* 125 Conn. 380, 383, 5 A.2d 855 (heat or sunstroke). *Consumers Co.* v. *Industrial Commission,* 324 Ill. 152, 154 N.E. 423, relied on by the defendant, cites (p. 158) the *Larke* case with approval.

The refusal of the trial court to sustain the appeal from the commissioner was correct.

There is no error.

In this opinion the other judges concurred.