### ROBERT RUSSELL *v.* MYSTIC SEAPORT MUSEUM, INC., ET AL.
### (AC 17747)

Foti, Landau and Dupont, Js.

Argued December 4, 1998—officially released March 16, 1999

*Amy M. Stone*, with whom, on the brief, was *Nathan Julian Shafner*, for the appellant (plaintiff).

*Joseph E. Skelly, Jr.*, for the appellees (defendants).

*Opinion*

FOTI, J. The plaintiff, Robert Russell, appeals from the decision of the compensation review board (board) affirming the decision of the workers' compensation commissioner for the second district (commissioner)

(1) denying the plaintiff's motion to preclude, (2) dismissing his claim for failing to sustain his burden of proof that he suffered from a repetitive trauma injury and (3) dismissing as untimely filed his claim for workers' compensation benefits for his May 2, 1991 injury. We affirm the decision of the board.

The following facts are relevant to this appeal. The commissioner held a hearing on July 25, 1995, and found the following facts. The plaintiff was, at all relevant times, an employee of the defendant, Mystic Seaport Museum, Inc. (Mystic).[1] On May 2, 1991, the plaintiff was working as an engineer aboard the steamboat Sabino. On that day, the plaintiff was reassembling a valve that had been taken apart. To get a better grip on the valve assembly, he changed his position and then fell approximately four and one-half feet to the deck plating. As he fell, he hit his left elbow on a pipe, shoving his left arm behind his head and dislocating his shoulder. After he landed, the plaintiff reduced the dislocation himself.

After the accident, the plaintiff submitted an employee incident report and continued working the rest of his shift. The plaintiff did not seek medical treatment or miss any time from work because of the injury. Mystic completed an employer's first report of occupational injury or disease on May 8, 1991.

The plaintiff's typical workday included ten to twelve hour shifts during which he was responsible for the regular maintenance of the Sabino and stoking the ship's coal burning boiler. Additionally, he spent approximately one half of his workday turning valves, including some above his head, requiring full extension of his arm.

---

[1] Mystic's compensation insurance carrier, ITT Hartford, is also a defendant in this appeal.

The plaintiff had suffered between twenty to thirty partial and full dislocations of his left shoulder between the time of the accident and October, 1994, some of which happened while he was working. The plaintiff first notified his supervisor, Dick Lotz, and the director of human resources, Mark Duland, in September, 1993, that he was having trouble with his shoulder. The plaintiff informed Duland of the May, 1991 fall and Duland told him to see a physician and to submit the bills to Mystic. The plaintiff saw his personal physician, Job Sandoval, on September 24, 1993. Sandoval prescribed strengthening exercises for the plaintiff. In November, 1993, the plaintiff informed Duland that he was not improving and returned to Sandoval, who referred him to an orthopedic surgeon, J. A. Hallberg. On April 19, 1994, Hallberg suggested that the plaintiff undergo corrective shoulder surgery.

The plaintiff first informed Mystic that he wanted to file a workers' compensation claim for the May, 1991 fall in October, 1994. The plaintiff decided to have the corrective surgery on October 24, 1994. His last day at work prior to the surgery was October 21, 1994.

The plaintiff filed a notice of claim, and the commissioner held a hearing on July 25, 1995. The commissioner denied his motion to preclude and determined that the plaintiff did not suffer a compensable injury. The plaintiff then appealed from the commissioner's decision to the board. The board affirmed the commissioner's decision in an opinion dated October 24, 1997. The plaintiff appeals from that decision. Additional facts will be set forth as they become necessary.

I

The plaintiff claims first that his motion to preclude the defendant from contesting his claim was improperly denied. The plaintiff claims that (1) the commissioner improperly concluded that his notice of claim failed to

comply substantially with the notice requirements of
General Statutes § 31-294c (a)[2] in that the notice did

---

[2] General Statutes § 31-294c provides in relevant part: "(a) No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease . . . . Notice of a claim for compensation may be given to the employer or any commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting from the accident, or the date of the first manifestation of a symptom of the occupational disease and the nature of the disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. . . . As used in this section, 'manifestation of a symptom' means manifestation to an employee claiming compensation, or to some other person standing in such relation to him that the knowledge of the person would be imputed to him, in a manner that is or should be recognized by him as symptomatic of the occupational disease for which compensation is claimed.

"(b) Whenever liability to pay compensation is contested by the employer, he shall file with the commissioner, on or before the twenty-eighth day after he has received a written notice of claim, a notice in accord with a form prescribed by the chairman of the Workers' Compensation Commission stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the specific grounds on which the right to compensation is contested. The employer shall send a copy of the notice to the employee in accordance with section 31-321. If the employer or his legal representative fails to file the notice contesting liability on or before the twenty-eighth day after he has received the written notice of claim, the employer shall commence payment of compensation for such injury or death on or before the twenty-eighth day after he has received the written notice of claim, but the employer may contest the employee's right to receive compensation on any grounds or the extent of his disability within one year from the receipt of the written notice of claim, provided the employer shall not be required to commence payment of compensation when the written notice of claim has not been properly served in accordance with section 31-321 or when the written notice of claim fails to include a warning that (1) the employer, if he has commenced payment for the alleged injury or death on or before the twenty-eighth day after receiving a written notice of claim, shall be precluded from contesting liability unless a notice contesting liability is filed within one year from the receipt of the written notice of claim, and (2) the employer shall be conclusively presumed to have accepted the compensability of the alleged injury or death unless the employer either files a notice contesting liability on or before the twenty-eighth day after receiving a written notice of claim or commences payment for the alleged injury or death on or before such twenty-eighth day. . . . Notwithstanding the provisions of this subsection, an employer who fails to contest liability for an alleged injury

not state any date of injury and (2) the defendant's notice contesting compensability was insufficient because it (a) failed to list the correct date of injury and (b) failed to state substantially the specific grounds on which the defendant was denying compensability. We disagree with the plaintiff.

We begin by addressing the appropriate standard of review. The board " 'hear[s] the appeal on the record of the hearing before the commissioner' unless it determines, under the statute, to take 'additional evidence or testimony.' General Statutes § 31-301 (a)." *Castro* v. *Viera*, 207 Conn. 420, 440, 541 A.2d 1216 (1988). "The decision of the compensation review [board] must stand unless it results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) Id.

A

The plaintiff filed a notice of claim for a repetitive trauma injury occurring "prior to [September 23, 1994]." The notice was received by the defendant on December 2, 1994. The notice of claim states: "Notice is hereby given that the undersigned [the plaintiff], who while in the employ of Mystic Seaport Museum at Mystic prior to [September 23, 1994], sustained injuries arising out of and in the course of his/her employment as follows: 'Repetitive trauma to left (non-master) shoulder while working as an engineer.' "

Section 31-294c sets forth the prerequisites for succeeding on a motion to preclude. For an injured employee to succeed on a motion to preclude, the employee must file a notice of claim within one year

or death on or before the twenty-eighth day after receiving a written notice of claim and who fails to commence payment for the alleged injury or death on or before such twenty-eighth day, shall be conclusively presumed to have accepted the compensability of the alleged injury or death. . . ."

from the date of the injury. General Statutes § 31-294c (a). The employer also must file a notice contesting compensability within twenty-eight days after it receives the notice of claim from the employee. General Statutes § 31-294c (b).

The purpose of the preclusion statute was thoroughly discussed by our Supreme Court in *Menzies* v. *Fisher*, 165 Conn. 338, 334 A.2d 452 (1973). The Supreme Court stated: "The object which the legislature sought to accomplish is plain. Section 31-297 (b) [the predecessor to § 31-294c] was amended to ensure (1) that employers would bear the burden of investigating a claim promptly and (2) that employees would be timely apprised of the specific reasons for the denial of their claim. These effects would, in turn, diminish delays in the proceedings, discourage arbitrary refusal of bona fide claims and narrow the legal issues which were to be contested. To narrow the scope of the controversy would lighten the burden on the claimant in terms of legal expenses, a result which the legislature plainly desired to accomplish by its 1967 amendments. See 12 H.R. Proc., Pt. 9, 1967 Sess., pp. 4037–38 . . . ." *Menzies* v. *Fisher*, supra, 343–44.

The criteria of § 31-294c need not be perfectly met for a claimant's notice of claim to be sufficient. *Pereira* v. *State*, 228 Conn. 535, 542–43 n.8, 637 A.2d 392 (1994). Minor defects will be overlooked as long as the employer will not be unduly prejudiced. Id.

In the present case, the plaintiff filed his notice of claim listing the date of injury as "prior to [September 23, 1994]." This date, however, is not the proper date of injury for the purposes of § 31-294c (a). The review board has consistently taken the position that, as a matter of law, the date of injury of a repetitive trauma is the last day of exposure—most commonly the last date of employment; see *Sanford* v. *Clinton Public*

*Schools*, 03446 CRB-03-96-10 (March 5, 1998); *Carvalko* v. *Bassick Co.*, 9 Conn. Workers' Comp. Rev. Op. 258 (1991); *Dorsett* v. *General Dynamics Corp.*, 8 Conn. Workers' Comp. Rev. Op. 77, aff'd, 23 Conn. App. 827, 584 A.2d 484 (1990), cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991); our courts have endorsed this position. See *Discuillo* v. *Stone & Webster*, 242 Conn. 570, 581, 698 A.2d 873 (1997); *Crochiere* v. *Board of Education*, 227 Conn. 333, 354, 630 A.2d 1027 (1993); *Borent* v. *State*, 33 Conn. App. 495, 499, 636 A.2d 392 (1994).

In the present case, the plaintiff's last day at work was October 21, 1994, the Friday before his shoulder surgery. As a matter of law, October 21, 1994, was the date of the plaintiff's injury because that was the last day of exposure. September 23, 1994, has no legal significance. Although the plaintiff claims that September 23, 1994, was a proper date because it encompassed all injuries that he sustained as of that date, we disagree. The case law is clear on when the legal date of injury occurs. Additionally, § 31-294c (a) requires that the claimant file a notice of claim within one year of *"the date of the accident."* (Emphasis added.)

The plaintiff claims that listing October 21, 1994, as the date of injury would not have provided the defendants with any additional information with which to investigate the plaintiff's claim. If we were to hold that listing a date nearly one month prior to the date of injury was sufficient notice, numerous problems would result. Future employers would be faced with the situation in which an employee who was suffering from a repetitive trauma injury could file a claim with a date prior to his date of injury, then suffer additional repetitive injuries. The employer would not be able to investigate the employee's claim fully and accordingly would be unable to state sufficiently any reasons for denying compensability for any additional injuries.

While this court held in *Chase* v. *State*, 45 Conn. App. 499, 506, 696 A.2d 1299 (1997), that a notice of claim using the language "on or before July 19, 1989," did not invalidate that notice, we did state that "[i]f the results of the defendant's investigation did not reveal an accidental injury on the precise date given in the notice, or in the *several days* prior thereto, the defendant reasonably could have disclaimed liability . . . ." (Emphasis added.) Clearly, one month exceeds the several days in which we held that an employer reasonably could discover an employee's injuries.

The plaintiff cites *Borent* v. *State*, supra, 33 Conn. App. 495, for the proposition that listing the last day of exposure as the date of injury in a repetitive trauma injury does not give the employer any additional information with which to investigate the employee's claim. His reliance on *Borent* is misplaced. *Borent* involved the issue of whether the claimant's notice of claim was timely. In *Borent*, we merely affirmed the board's decision reversing the trial commissioner's finding of a date of injury. Id., 500. While *Borent* did list a date of injury in a repetitive trauma case different from the last day of exposure, neither this court nor the board discussed the possibility that an employer would be unable to investigate the claim properly because of an incorrect date of injury.

" 'We accord great deference to the construction given to [§ 31-294c] by the commissioner and the [board] because they are both charged with its enforcement. *Police Department* v. *State Board of Labor Relations*, 225 Conn. 297, 300, 622 A.2d 1005 (1993); *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 119–20, 584 A.2d 1172 (1991).' *Crochiere* v. *Board of Education*, [supra, 227 Conn. 354]." *Borent* v. *State*, supra, 33 Conn. App. 499. The board has previously construed small deviations in date of injury as de minimis errors and, therefore, in compliance with

§ 31-294c, or its predecessor. See *Bonin* v. *Thames Valley Steel*, 1492 CRB-2-92-8 (February 14, 1997) (stated date of injury five days after employment ended sufficient to sustain motion to preclude); *Quinn* v. *Standard Knapp*, 12 Conn. Workers' Comp. Rev. Op. 334, 335 (1994), appeal dismissed, 40 Conn. App. 446, 671 A.2d 1333 (1996) (listing date only one day after last day worked as de minimis); *Bell* v. *Dow Corning STI, Inc.*, 13 Conn. Workers' Comp. Rev. Op. 109, 110 (1995) (five day discrepancy within range of de minimis error); but see *Fleming* v. *New Haven Register*, 14 Conn. Workers' Comp. Rev. Op. 263, 265 (1995) (injury date two months prior to last day of trauma insufficient to support motion to preclude).

The commissioner found that the plaintiff's use of prior to September 23, 1994 was "not de minimis but is essentially no date at all." Although we do not agree that the date chosen by the plaintiff in his notice of claim is no date at all, given the board's prior decisions on this issue and the great deference we give to the board and the commissioner, we agree that the plaintiff's stated date of injury was statutorily insufficient to support a motion to preclude.

We recognize that the mandate in *Pereira* requires a liberal interpretation of § 31-294c to ensure that it accomplishes its humanitarian purpose. We do not think, however, that *Pereira* encompasses a situation where the claimant's error is more than de minimis. The commissioner properly found that the date in the plaintiff's notice of claim constitutes more than a de minimis error, and the board properly affirmed the commissioner's decision denying the plaintiff's motion to preclude. Accordingly, the plaintiff's notice of claim is insufficient to support a motion to preclude.

B

The plaintiff asks us to review the sufficiency of the defendants' notice contesting compensability. He

claims that the defendants' notice is deficient because it (1) does not state correctly the date of injury and (2) does not state the defendants' reasons for denying compensability with the specificity required by § 31-294c (b). Because we conclude that the plaintiff's notice of claim is insufficient to support a motion to preclude, we need not reach the issue of whether the defendants' notice contesting compensability was insufficient.

## II

The plaintiff next claims that the board improperly affirmed the commissioner's decision holding that the plaintiff did not sustain a repetitive trauma injury. We disagree with the plaintiff.

This court adopted the board's description of repetitive trauma injuries in *Quinn* v. *Standard Knapp*, supra, 12 Conn. Workers' Comp. Rev. Op. 334, in *Chase* v. *State*, supra, 45 Conn. App. 506. "A repetitive trauma, by definition, necessarily occurs over a period of time." Id. Nonetheless, "[i]t is well settled in workers' compensation cases that the injured employee bears the burden of proof . . . . *Murchison* v. *Skinner Precision Industries, Inc.*, 162 Conn. 142, 151, 291 A.2d 743 (1972). Further '[t]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them.' . . . *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539, 542 A.2d 1118 (1988); *Rogers* v. *Laidlaw Transit, Inc.*, 45 Conn. App. 204, 206, 695 A.2d 1071 (1997)." *Keenan* v. *Union Camp Corp.*, 49 Conn. App. 280, 282–83, 714 A.2d 60 (1998). Furthermore, whether an employee has suffered a repetitive trauma injury or an accidental injury is a question of fact to be determined by the commissioner. *Prescott* v. *Echlin, Inc.*, 14 Conn. Workers' Comp. Rev. Op. 191, 193 (1995).

The plaintiff testified that his shoulder dislocations occurred in a wide variety of situations, from carrying heavy pipes at work to turning off the alarm clock. The plaintiff presented no medical witnesses on his behalf. The only medical evidence was a report by Hallberg that stated, "I think there is little question but that the *initial injury* was a work related event" (emphasis added) and a letter from Hallberg to the plaintiff's attorney stating, "The fact that [Russell] lived with this condition for [three] years and suffered some [twenty to thirty] dislocations probably has produced some wear and tear on the shoulder. *There is no way to quantify this at this point,* but he certainly would be at risk of developing shoulder problems in the future . . . ." (Emphasis added.)

On the basis of the report and letter from Hallberg, the commissioner found that (1) the plaintiff sustained a specific injury to his left shoulder on May 2, 1991, (2) the plaintiff's shoulder injury was not a result of repetitive trauma and (3) the plaintiff's dislocations subsequent to the May 2, 1991 fall were a recurrence of the May 2, 1991 specific injury. The board determined that the commissioner reasonably could have found that the "the subsequent dislocations were merely flare-ups of a condition caused by the initial May 2, 1991 injury."

"The [commissioner] must necessarily draw an inference from what he has found to be the basic facts. The propriety of that inference, of course, is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is *sharply limited* by the foregoing statutory provisions. If supported by evidence and not inconsistent with the law, the [commissioner's] inference . . . is conclusive. *No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by*

*the court because of a belief that the one chosen by the [commissioner] is factually questionable.*" (Emphasis added; internal quotation marks omitted.) *Fair* v. *People's Savings Bank,* supra, 207 Conn. 539–40. "Even if such an inference be considered more legal than factual in nature, the reviewing court's function is exhausted when it becomes evident that the [commissioner's] choice has substantial roots in the evidence and is not forbidden by the law." Id., 540–41.

The commissioner had before her a medical report and opinion and the testimony of the plaintiff from which she could properly determine whether Russell's subsequent dislocations were the result of repetitive trauma or a result of the initial May 2, 1991 dislocation. The board could not go back and make different inferences from the facts presented to the commissioner and neither can we. We conclude that the board properly determined that the commissioner's findings were reasonable, supported by the evidence and not contrary to law. The board properly affirmed the commissioner's decision.

## III

The plaintiff claims finally that the incident report that he filed with Mystic on May 2, 1991, when considered with the other circumstances surrounding his claim, satisfies the notice of claim requirements of General Statutes (Rev. to 1991) § 31-294 (repealed by Public Acts 1991, No. 91-32, § 40).[3] We disagree.

We note again that the technical requirements of the notice statute need not be perfectly met to satisfy the intent of the statute. See *Pereira* v. *State,* supra, 228 Conn. 542–43 n.8. There must, however, be substantial

[3] General Statutes § 31-294 was transferred to General Statutes §§ 31-294b and 31-294c effective July 1, 1991.

compliance to satisfy the notice requirement. "The legislature designed the Workers' Compensation Act to further a remedial purpose. *Dubois* v. *General Dynamics Corporation*, 222 Conn. 62, 67, 607 A.2d 431 (1992). The act's provisions, therefore, should be broadly construed to accomplish its humanitarian purpose. . . . *Hansen* v. *Gordon*, 221 Conn. 29, 33, 602 A.2d 560 (1992). The purpose of § 31-294, in particular, is to alert the employer to the fact that a person has sustained an injury that may be compensable; *Gesmundo* v. *Bush*, 133 Conn. 607, 612, 53 A.2d 392 (1947) . . . and that such person is claiming *or proposes to claim* compensation under the Act. . . . *Rehtarchik* v. *Hoyt-Messinger Corporation*, 118 Conn. 315, 317, 172 A. 353 (1934) . . . ." (Emphasis in original; internal quotation marks omitted.) *Black* v. *London & Egazarian Associates, Inc.*, 30 Conn. App. 295, 302–303, 620 A.2d 176, cert. denied, 225 Conn. 916, 623 A.2d 1024 (1993).

We recently held in *Funaioli* v. *New London*, 52 Conn. App. 194, 726 A.2d 626 (1999), in which we reversed the board, that an employee's first report of injury coupled with an attorney's letter to the commission met the statutory requirements for a notice of claim. The plaintiff, in both his brief and at oral argument, claimed that *Funaioli* applied to his case. We conclude that *Funaioli* is distinguishable from the present case. In *Funaioli*, we concluded that the board properly determined that an employer's first report of injury alone would not meet the notice requirements of § 31-294c. *Funaioli* rested on the factual issues in that case. We do not expand the holding in that case to state that all first reports of injury satisfy the notice of claim requirements in the statute.

In the present case, the plaintiff did nothing more than file an employee incident form stating that he had injured his shoulder on May 21, 1991. He took no further action for over two years when he told his employer that he was having problems with his shoulder. Even

at this point, the plaintiff did not inform Mystic that he was considering filing for workers' compensation benefits as a result of his fall. The plaintiff did not tell Mystic that he was considering filing for benefits until nearly three and one-half years after the initial accident, well after the one year limitation period had expired.

The plaintiff further claims that "the employer clearly construed the report as a notice of claim for compensation since the employer immediately filed an employer's first report of occupational injury or disease with the workers' compensation commission in compliance with § 31-294 (b), which it is required to do when it receives a notice of claim. The filing of the form by the employer confirms both knowledge of the injury and an expectation that compensation would be claimed." We find no merit in the plaintiff's argument.

General Statutes (Rev. to 1991) § 31-294 (b) provides in relevant part: "Within one week after receipt by an employer of such notice of claim for compensation, he shall report the substantial facts of such notice to the commissioner. . . ." General Statutes (Rev. to 1991) § 31-316[4] requires employers to forward a report of injury to the commissioner when any employee is injured and misses a day or more of work. While the plaintiff argues that Mystic's filing of the first report of injury with the commissioner constitutes acknowledgement of the plaintiff's "notice of claim," there is no evidence to support the contention that the employer was taking such action for that purpose. The fact that Duland told the plaintiff, over two years after the initial accident, to submit the medical bills for his visits to Sandoval does not indicate that Mystic accepted the plaintiff's incident report as a notice of claim.

---

[4] General Statutes (Rev. to 1991) § 31-316 provides in relevant part: "Each employer shall keep a record of such injuries sustained by his employees in the course of their employment as result in incapacity for one day or more; and each such employer shall send to the chairman of the board of compensation commissioners . . . such report of such injuries . . . ."

The board, in affirming the commissioner's decision, properly applied the law to the facts, and we adopt the following portion of that opinion as our own. "[A] first report of injury does not inform its recipient that a workers' compensation claim is or will be filed, and will not be construed otherwise *absent very unusual circumstances.* See e.g. *Hayden-Leblanc* v. *New London Broadcasting,* 12 Conn. Workers' Comp. Rev. Op. 3, 5 (1994) (trier found sufficient notice where insurer denied workers' compensation coverage and employer incorrectly told claimant that she was too late to file claim). That is the purpose of a form 30C notice of claim.

"There is no indication in this case that [Mystic] had any idea that [Russell] intended to file a workers' compensation claim from either his own incident report or the injury report filed by the employer. All those documents do is report that an injury occurred. In hindsight, it appears that the lack of intent to file a claim was borne out by [the plaintiff's] inaction for over two years after the May, 1991 shoulder injury. Now that the statute of limitations to file a claim has lapsed, we cannot go back and say that those reports of injury demonstrated anything more than compliance with a procedure designed to ensure compliance with § 31-316. . . . [T]he fact that the [plaintiff] reported his injuries to his employer is not by itself enough to constitute substantial compliance with § 31-294." (Emphasis added.) The plaintiff's filing of the incident report and the defendants' subsequent filing of the first report of injury do not rise to the level of a filing of a statutory notice of claim, which we concluded did exist in *Funaioli* v. *New London,* supra, 52 Conn. App. 198.

Furthermore, the plaintiff admitted that his incident report did not state that he or any other person was claiming compensation benefits. Section 31-294c (a) states that a notice of claim must contain "the name and address of the employee and of the person in whose

interest compensation is claimed." Without such a notice, we fail to see how the plaintiff's incident report rose to the level of a notice of claim.

The decision of the compensation review board is affirmed.

In this opinion LANDAU, J., concurred.

DUPONT, J., dissenting. I respectfully dissent. The primary issue in this appeal is whether the plaintiff's notice of claim for workers' compensation complied with General Statutes § 31-294c (a). That notice, dated November 30, 1994, sought compensation for "repetitive trauma to left (non-master) shoulder while working as an engineer," and stated that the date of injury was "prior to 9/23/94." The purpose of such a notice is to allow an employer to investigate a worker's claim for compensation promptly to avoid unnecessary delay in an adjudication of a worker's claim. Whether a particular notice of claim is sufficient to allow such a timely investigation is a question of law. *Chase* v. *State*, 45 Conn. App. 499, 508, 696 A.2d 1299 (1997). I conclude that the notice was sufficient for that purpose and would therefore hold that the commissioner should not have denied the plaintiff's motion to preclude, and that the board should not have affirmed the commissioner's decision.[1]

The plaintiff, in his notice of claim, does not assert a claim for compensation for the accidental injury that occurred on May 2, 1991. He claims instead compensation for a repetitive trauma, for which no precise date is possible. See *Chase* v. *State*, supra, 45 Conn. App. 507. In this case, despite the plaintiff's claim for compensation for a repetitive trauma, the defendant has consistently treated the plaintiff's notice of claim as

---

[1] In view of my conclusion that the notice of claim complied with § 31-294c, the issue discussed in part III of the majority opinion becomes irrelevant.

one for an accidental injury occurring on a specific date for both the purpose of testing the timeliness of the notice and testing its sufficiency to allow a timely investigation.[2]

The "type of injury alleged in the notice of claim" of an employee is considered "accurate for the purpose of reviewing the timeliness" of a plaintiff's claim. *Borent* v. *State*, 33 Conn. App. 495, 499, 636 A.2d 392 (1994). Because the plaintiff's claim is one for repetitive trauma, it should have been filed within one year of the last date of exposure to the act or trauma, which is usually, but not always, the date on which the claimant last worked. *Discuillo* v. *Stone & Webster*, 242 Conn. 570, 581, 698 A.2d 873 (1997); *Crochiere* v. *Board of Education*, 227 Conn. 333, 353–54, 630 A.2d 1027 (1993). The plaintiff's claim for compensation for repetitive trauma met the statute of limitations prescribed by § 31-294c (a) because it was filed within one year of the last date of exposure to the trauma.[3]

The next question to decide is whether the words, "prior to 9/23/94," gave sufficient information to the employer to investigate the plaintiff's claim.

The commissioner found that "[s]ubsequent to May 2, 1991, and until the fall of 1994 the plaintiff experienced

---

[2] The defendants filed three notices contesting liability for the plaintiff's recommended surgery performed on October 24, 1994. Two of the disclaimer notices predated the plaintiff's notice of claim for compensation and all of the defendants' disclaimers referenced the May 2, 1991 accident, rather than the plaintiff's repetitive trauma claim relating to an injury prior to September 23, 1994.

[3] Because the commissioner found that the plaintiff's injury was not due to a repetitive trauma, she made no finding as to the last date of exposure to the repetitive trauma. Although October 21, 1994, was the last day the plaintiff worked, it is not known whether September 23, 1994, was the last time the plaintiff was exposed to a repetitive trauma at work. The plaintiff may not have been assigned to his usual duties between September 23 and October 21, making it possible that the last day worked was not the last day he was exposed to the trauma. The last date of exposure might also

numerous total and/or partial dislocations of his left shoulder. These dislocations occurred at work when the claimant was carrying lumber or heavy pipes on his shoulder or when he was manipulating steam valves," and that he "suffered a partial dislocation in July, 1994, while turning a valve during a test of the steam generator at work," and that the plaintiff's "last full dislocation at work occurred in August, 1994, while manipulating the main steam valve." The commissioner also found that the plaintiff had filed an employee incident report immediately following his May 2, 1991 fall, and that he had made his employer's director of human resources and his immediate supervisor aware of problems with his shoulder in September, 1993. On the basis of these facts, the commissioner, nevertheless, found that all of the left shoulder dislocations were a "recurrence of the May 2, 1991 specific injury," rather than a result of repetitive trauma.

The words, "prior to 9/23/94," gave the employer notice that the repetitive trauma injury occurred over time, prior to September 23, 1994, and after May 2, 1991. The nature of a repetitive trauma injury is such that it is often impossible to ascertain a specific date of injury. Such an injury consists of repetitive trauma that begins with an initial trauma and is ongoing until the last instance of trauma. *Discuillo* v. *Stone & Webster*, supra, 242 Conn. 581 n.11.

Here, the employer was aware of new, separate, identifiable, work-related occurrences of trauma, in addition to the initial trauma of the fall on May 2, 1991. It paid for medical treatment of the plaintiff's shoulder after September, 1993. There were separate, subsequent intervening acts or trauma, while the plaintiff was working, to the same shoulder after the plaintiff's initial

have been sometime in August, 1994, which was when the commissioner found that the plaintiff's "last full dislocation at work occurred."

injury, as found by the commissioner. This is not a case of a recurrence of the initial dislocation of the plaintiff's shoulder independent of any subsequent trauma. It was not necessary for the plaintiff to allege a specific date for his repetitive trauma injury. It was sufficient to allege, given the facts of this case, that he incurred the injury "on or before" a specific date. *Chase* v. *State*, supra, 45 Conn. App. 506. The defendant could focus its investigation on a particular period of time, and had the requisite information to do so.

In my opinion, the conclusions of the board resulted from an incorrect application of the law, and I would grant the plaintiff's motion to preclude the defendants from contesting the claim because the plaintiff's notice of claim for compensation for his repetitive trauma injury was timely and gave the defendant an opportunity to investigate the claim. Also, I would conclude that the plaintiff's injury was causally related to repetitive trauma based on the subsidiary facts found by the commissioner.