41 A.3d 296 (2012)
304 Conn. 571
John A. CARTER
v.
TOWN OF CLINTON.
No. 18200.
Supreme Court of Connecticut.
Argued February 1, 2012.
Decided May 1, 2012.
*297 Jill Morrissey, with whom was David J. Morrissey, Naugatuck, for the appellant (plaintiff).
*298 Henry J. Zaccardi, with whom was Sheila A. Huddleston, Hartford, for the appellee (defendant).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN, EVELEIGH and HARPER, Js.
McLACHLAN, J.
This appeal requires us to consider the application of the medical care exception to the one year statute of limitations set forth in General Statutes § 31-294c.[1] The plaintiff, John A. Carter, appeals[2] from the decision of the compensation review board (board), affirming the decision of the workers' compensation commissioner for the third district (commissioner) dismissing his claim seeking heart and hypertension benefits pursuant to General Statutes § 7-433c[3] for lack of subject matter jurisdiction on the basis that the notice of claim was untimely filed. The plaintiff argues that the board improperly rejected his argument that the statute of limitations was tolled by the medical care exception set forth in § 31-294c (c). Because we *299 conclude that the board properly concluded that the plaintiff had failed to establish that the medical care exception applied to toll the statute of limitations, we affirm the decision of the board.
The board's decision sets forth the following relevant facts and procedural history. "The [plaintiff] worked for the [defendant, the] town of Clinton as a police officer from 1972 through 1998. He sustained a right shoulder injury on February 20, 1996, that required surgery, and returned to regular duty in July, 1996. On October 2, 1996, [in] the line of duty, he was attempting to lift a heavy person when he felt a pop and sharp pain in his right shoulder that traversed his upper back. He also reported a sense of going into shock, with dizziness, shortness of breath, lightheadedness, and a crushing pain in the front and back. He completed an injury report for [the defendant], and went to the hospital for treatment, reporting increasing pain and discomfort in his shoulder.
"The attending physician at the hospital opined that he had a labral tear. A [computed tomography scan] of his scapula showed no abnormalities, and the [plaintiff] was referred to [John Daigneault, an orthopedic surgeon] for an orthopedic evaluation. After the [plaintiff] reported pain, clinking and grinding in the scapular area, [Daigneault] performed scapular reduction surgery in 1997, which was authorized by the [defendant]. In 1998, pain continued, beginning to radiate into the neck and jaw. A cervical spine [magnetic resonance imaging] showed two herniated discs and degenerative changes, leading to fusion surgery in April, 1998. The [plaintiff] then retired from the police force because of his injuries. [Daigneault] identified a 20 [percent] permanent partial impairment of the right shoulder from the October, 1996 injury, and a 10 [percent] impairment from the February, 1996 injury. [Myron E. Shafer, an orthopedic surgeon] rated the [plaintiff] with a 25 [percent] permanent impairment of the right arm on January 7, 1998, noting a great deal of pain, discomfort and sensitivity.
"At the request of the [plaintiff's] primary physician, [Bernard Sheehan], the [plaintiff] underwent an [electrocardiogram] in September, 1998, that showed no acute changes. According to the [plaintiff], [Sheehan] had thought a stress test unnecessary despite the [plaintiff's] spoken fear that something was wrong with his heart. In March, 2000, another [electrocardiogram] was described as normal by [Sheehan]. The [plaintiff] was given pills to provide relief from presumed acid buildup. [Sheehan] prescribed a stronger antacid on April 3, 2000, noting the continuation of severe shoulder pain. On April 5, 2000, the [plaintiff] suffered an acute myocardial infarction, and was transported to the hospital where he had an angioplasty, followed by four-vessel coronary artery bypass surgery on April 7, 2000.
"The [plaintiff] filed a form 30C[4] on June 20, 2001, claiming that the right shoulder condition was misdiagnosed and that his October 2, 1996 symptoms were caused by a cardiac problem. The [defendant] contested this claim both on the basis of a lack of direct causal relation between the lifting incident and the myocardial infarction, and because the 2001 form 30C was untimely for a 1996 injury." On January 5, 2007, the commissioner dismissed the claim due to lack of *300 subject matter jurisdiction, finding that the plaintiff had not produced sufficient evidence to show that his April 5, 2000 myocardial infarction was causally related to the October 2, 1996 incident. The commissioner also found that the statute of limitations was not tolled by the plaintiff's allegation that his heart condition was misdiagnosed following the October 2, 1996 incident, and that his June 20, 2001 notice of claim was untimely. The commissioner denied the plaintiff's motions to correct and for reconsideration. The board subsequently affirmed the decision of the commissioner, and this appeal followed.
The sole issue in this appeal is whether the board correctly concluded that the medical care exception in § 31-294c did not apply to toll the statute of limitations for the plaintiff's claim for benefits pursuant to § 7-433c. The plaintiff contends that, because he claims that the October 2, 1996 incident caused him to experience symptoms of angina, his claim for benefits pursuant to § 7-433c falls under the medical care exception in § 31-294c (c), regardless of the commissioner's factual finding of no causal connection between the October 2, 1996 incident and his heart disease. In response, the defendant argues that, under the board's time-tested interpretation of § 31-294c (c), in order for a claimant to fall under the medical care exception, he must prove either: (1) that his employer previously furnished medical care for the specific condition at issue in the late claim; or (2) that a late claimed condition was causally related to a timely reported incident for which the employer furnished medical care. Because the plaintiff has not satisfied either of these showings, the defendant argues, the board correctly affirmed the decision of the commissioner dismissing the claim for lack of subject matter jurisdiction. We agree with the defendant.
"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them.... It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board.... [W]e do not afford deference to an agency's interpretation of a statute when ... the construction of a statute previously has not been subjected to judicial scrutiny or to a governmental agency's time-tested interpretation...." (Citation omitted; internal quotation marks omitted.) Jones v. Redding, 296 Conn. 352, 362-63, 995 A.2d 51 (2010).
Pursuant to § 7-433c (a), a firefighter or police officer[5] who has passed a preemployment physical examination that did not reveal any evidence of hypertension or heart disease, and who subsequently develops "any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568...." General Statutes § 7-433c (a). "It is well settled *301 that the special compensation, or the outright bonus, of § 7-433c is that the claimant is not required to prove that the heart disease is causally connected to [his or her] employment, which he [or she] would ordinarily have to establish in order to receive benefits pursuant to the Workers' Compensation Act.... The benefits provided under § 7-433c are, however, payable and administered under the Workers' Compensation Act ... and the type and amount of benefits available pursuant to § 7-433c are the same as those under the Workers' Compensation Act...." (Internal quotation marks omitted.) Ciarlelli v. Hamden, 299 Conn. 265, 276-77, 8 A.3d 1093 (2010).
Although a claimant need not prove that his heart disease is causally connected to his employment in order to qualify for benefits pursuant to § 7-433c, he must prove that he satisfies the jurisdictional threshold set forth in § 31-294c (a), which requires that a claimant provide his employer a "written notice of claim for compensation... within one year from the date of the accident ... which caused the personal injury...." See, e.g., Malchik v. Division of Criminal Justice, 266 Conn. 728, 739, 835 A.2d 940 (2003) ("[c]ompliance with [§ 31-294c] is essential to maintaining a claim for compensation under chapter 568 and therefore under ... § 7-433c... because timely notice is a jurisdictional requirement that cannot be waived" [internal quotation marks omitted]). We recently have explained that "the one year limitation period for claims under § 7-433c begins to run only when an employee is informed by a medical professional that he or she has been diagnosed with hypertension [or heart disease]."[6]Ciarlelli v. Hamden, supra, 299 Conn. at 300, 8 A.3d 1093.
Section 31-294c (c) excuses a claimant from compliance with § 31-294c (a) "if within the applicable period an employee has been furnished, for the injury with respect to which compensation is claimed, with medical or surgical care as provided in section 31-294d...." (Emphasis added.) The claimant bears the burden to show that the medical care exception applies. We have observed that the "purpose of the notice [requirement of § 31-294c (a)] is to inform the employer that an injury has been suffered upon which a claim for compensation will or may be founded.... The exception [in § 31-294c (c)] is, no doubt, based upon the fact that if the employer furnishes medical treatment he must know that an injury has been suffered which at least may be the basis of such a claim." (Citation omitted.) Gesmundo v. Bush, 133 Conn. 607, 612, 53 A.2d 392 (1947). Any interpretation of the scope of § 31-294c (c), accordingly, must be consistent with the principle that the employer's provision of medical care demonstrates that it was on notice that the claimant had suffered a compensable injury. In Gesmundo, we indicated that in order to find the medical care exception applicable, there must be some connection between the initial "injury" and the later claimed condition, but we did not have occasion in that case to explore in detail the nature of the required relation. Id., at 612-13, 53 A.2d 392. During the course of his employment, on the evening of December 31, 1943, the plaintiff in Gesmundo was driving a truck that had no heater and a drafty cab area due to broken floorboards. Id., at 609, 53 A.2d 392. It was a cold night, *302 and his feet were frostbitten as a result of the ride. Id. He filed no notice of claim, but he reported his injury to his supervisor, who referred him to a physician for treatment. Id. Over the course of the next two years, the plaintiff consulted with various physicians, ultimately receiving a diagnosis of a "vasomotor disturbance of the causalgic type, probably related to his frostbite." Id., at 610, 53 A.2d 392. In concluding that the commissioner correctly had concluded that the medical care exception applied, we specifically noted that the plaintiff had "suffered continuously since [the incident] and no other intervening cause of his condition has been proved." (Emphasis added.) Id., at 613, 53 A.2d 392.
Although Gesmundo is somewhat helpful in guiding our analysis, that case did not directly present the question of whether the medical care exception applies when a claimant receives treatment for an injury sustained in connection with an incident and later seeks coverage for a different injury or condition that has arisen from the same incident. The board, however, has had occasion to address this issue, and has interpreted the phrase in § 31-294c (c), "for the injury with respect to which compensation is claimed," to mean that a claimant can satisfy the medical care exception by proving either: (1) that his employer previously furnished medical care for the specific condition at issue in the late claim; or (2) that a late claimed condition was causally related to a timely reported incident for which the employer furnished medical care. The first method of proof is consistent with Gesmundo, in which the plaintiff's later condition of vasomotor disturbance developed from the initial condition of frostbite. Gesmundo v. Bush, supra, 133 Conn. at 610, 53 A.2d 392; see also Cessario v. Meriden, No. 5467, CRB-6-09-5 (May 21, 2010) (later claimed myocardial infarction "sequelae of a previous compensable injury," hypertension).
The second method of proof to which the medical care exception applies is a bit more complex, because the nexus between the late claimed condition and the initial incident is not the original condition for which the employer provided medical treatment, but the incident itself. The board's decision in Landrette v. Bristol, 11 Conn. Workers' Comp. Rev. Op. 149 (1993), illustrates this manner of proof. In Landrette, the claimant police officer injured his ankle during an altercation with a suspect and gave notice of claim to his employer on the same day. Id., at 150. The claimant alleged that he had provided oral notice of claim with respect to a mouth injury he received during the altercation, and the employer disputed that notice of claim had been provided or that any treatment had been furnished by the employer within the one year period. Id. Without referring to or relying on any resolution of these factual disputes between the parties by the commissioner, the board concluded that, regardless of whether the claimant had provided notice or the employer had provided treatment within the one year limit for the mouth injury, it was compensable because it was causally related to the incident for which the employer had furnished medical care. Id., at 151-52. In so concluding, the board relied on one of its earlier decisions, Hebert v. New Departure Hyatt Bearings, 4 Conn. Workers' Comp. Rev. Op. 94 (1987), in which it had allowed benefits for a late claimed injury, a herniated disc at the L1-2 level of his spine, because the employer had furnished medical treatment for a timely noticed injury, a herniated disc at the C5-6 level of his spine, because both injuries were causally related to the original incident. Id., at 95. The board subsequently relied on Landrette in Scott v. *303 Bridgeport, No. 4637, CRB-4-03-2 (February 24, 2004), which involved a dispute between the claimant and his employer regarding the compensability of a late claimed brain injury, where the claimant had alleged that the brain injury arose from the same work-related fall that had caused a timely noticed leg injury. Consistent with Landrette and Hebert, the board remanded the case to the commissioner to allow the claimant "the opportunity to demonstrate the causal link between a compensable accident and the head/traumatic brain injury." Id. The board's decision in the present case is consistent with its precedent spanning almost twenty years, as well as the principles we set forth in Gesmundo v. Bush, supra, 133 Conn. at 607, 53 A.2d 392. We conclude, therefore, that the interpretation is both time-tested and reasonable and should be accorded deference. See, e.g., Hartford v. Hartford Municipal Employees Assn., 259 Conn. 251, 270, 788 A.2d 60 (2002) (deference given to administrative board's reasonable "time-tested interpretation" of statutory terms).
Applying the rule to the present case, we conclude that the plaintiff has failed to demonstrate that he falls under the medical care exception. As to the first method of proof, the plaintiff did not attempt to demonstrate that the defendant had furnished medical care for his heart disease following the October 2, 1996 incident. In fact, his argument is inconsistent with that theory, since his starting point is his claim that he was misdiagnosed at the time. The plaintiff instead relied on the second method of proof, attempting to demonstrate a link between his April 6, 2000 myocardial infarction and the October 2, 1996 incident. The commissioner's findings, however, are fatal to the plaintiff's argument. First, the commissioner found that there was "insufficient evidence to support the [plaintiff's] allegation that his myocardial infarction on April 6, 2000, was causally related to his lifting incident on October 2, 1996." As the board observed, the commissioner's denial of the plaintiff's motion to correct the findings clarified that the commissioner found no connection between the lifting incident and the plaintiff's heart disease. Specifically, the commissioner rejected the plaintiff's motion to correct the findings to state that the plaintiff had "reported symptoms of heart disease on October 2, 1996, which were misdiagnosed as solely orthopedic problems but because the [defendant] provided medical care for the symptoms ... the claim is timely brought...." The commissioner, therefore, did not find that there had been a misdiagnosis or that the defendant had provided treatment to the plaintiff for symptoms of heart disease. Additionally, the plaintiff had requested that the findings be corrected to state: "The [plaintiff] suffered pain on October 2, 1996, which was reported to his employer and for which medical treatment was provided. It was discovered that this pain was both orthopedic and anginal in nature on April 6, 2000." The commissioner's denial of these requested corrections demonstrates that he found no connection whatsoever between the October 2, 1996 incident and the plaintiff's heart disease. Given these findings, which the plaintiff has not successfully challenged, the board properly affirmed the decision of the commissioner.
The plaintiff's arguments to the contrary are unpersuasive. First, he claims that he is not required to demonstrate that the October 2, 1996 incident caused his heart disease, because § 7-433c does not require a claimant to prove a causal connection to employment. Ciarlelli v. Hamden, supra, 299 Conn. at 276, 8 A.3d 1093. The plaintiff misses the point of the medical care exceptionalthough he *304 would not need to show a causal connection to his employment to qualify for benefits pursuant to § 7-433c, he still must meet the requirements of § 31-294c, which, because he seeks to benefit from the medical care exception provision, require that he prove either: (1) that his employer previously furnished medical care for the specific condition at issue in the late claim; or (2) that a late claimed condition was causally related to a timely reported incident for which the employer furnished medical care. The plaintiff argued that his heart disease was related to the October 2, 1996 incident, so he was required to show that the incident caused his late claimed condition, the heart disease.
The plaintiff also contends that, in order to toll the statute of limitations, he merely needed to demonstrate that he reported symptoms that were consistent with angina, and was not required to prove that the lifting incident caused his heart disease. As we already have explained, however, the commissioner's findings do not support the conclusion that the plaintiff reported symptoms that were consistent with angina. Finally, even if we agreed with the plaintiff's additional contention that the defendant at one point conceded the existence of coronary artery disease, which we do not, that argument would be unavailing. The commissioner's factual finding that the plaintiff failed to prove a connection between the October 2, 1996 incident and his heart disease is dispositive of the appeal.
The decision of the compensation review board is affirmed.
In this opinion the other justices concurred.
NOTES
[1] General Statutes § 31-294c provides in relevant part: "(a) No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury....

"(c) Failure to provide a notice of claim under subsection (a) of this section shall not bar maintenance of the proceedings if ... within the applicable period an employee has been furnished, for the injury with respect to which compensation is claimed, with medical or surgical care as provided in section 31-294d...."
[2] The plaintiff appealed from the decision of the compensation review board to the Appellate Court, and this court transferred the appeal to itself pursuant to General Statutes § 51-199(c) and Practice Book § 65-1.
[3] General Statutes § 7-433c (a) provides: "Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term `municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."
[4] "A form 30C is the form prescribed by the workers' compensation commission ... for use in filing a notice of claim under the [Workers' Compensation Act]...." (Internal quotation marks omitted.) Del Toro v. Stamford, 270 Conn. 532, 536 n. 4, 853 A.2d 95 (2004).
[5] The board observed that, "[t]he question of timely notice aside, claims for § 7-433c benefits are not recognized unless the condition of hypertension or heart disease and the death or disability resulting from such condition are suffered while the claimant is a regular member of the police or fire department." See General Statutes § 7-433c (a).
[6] The plaintiff does not claim to establish jurisdiction under § 31-294c (a), and indeed would be unable to do so. The commissioner included in his findings that the plaintiff was diagnosed with acute myocardial infarction on April 5, 2000. The commissioner also found that the plaintiff filed a form 30C, notice of claim on June 20, 2001, more than one year after he was diagnosed with heart disease.