******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSE DEJESUS *v.* R.P.M. ENTERPRISES, INC.
(AC 44111)

Bright, C. J., and Moll and Young, Js.

*Syllabus*

The defendant employer, R Co., and its owner, M, appealed to this court from the decisions of the Compensation Review Board affirming the finding of the Workers' Compensation Commissioner that the Workers' Compensation Commission had jurisdiction over the plaintiff's claim for workers' compensation benefits and that the plaintiff employee had sustained a compensable injury. The plaintiff sustained injuries when a car he was working on at R Co.'s junkyard fell on his shoulders and the back of his head. The plaintiff failed to file a notice of claim within one year of the date of his injury as required by statute (§ 31-294c), and R Co. and M argued that the commission lacked jurisdiction over the plaintiff's claim. The commissioner bifurcated the issues, deciding the jurisdictional question first before holding a hearing on the issue of compensability. After the first hearing, the commissioner found that the medical care exception in § 31-294c (c) applied. The commissioner further found that an employer-employee relationship existed between R Co. and/or M. Thus, the commissioner found that the commission had jurisdiction over the matter. R Co. and M filed a petition for review with the board, which affirmed the commissioner's finding of jurisdiction in a decision issued in 2017. In 2019, a hearing was held before the commissioner to address the issue of compensability. No additional evidence or testimony was presented and the parties agreed that record from the prior hearing would be incorporated by reference and constitute the record for purposes of the new hearing. The commissioner concluded that the plaintiff's injury was compensable and that R Co. and M, as alter egos, were jointly and severally liable. The board affirmed the decision of the commissioner in part, and R Co. and M appealed both decisions of the board to this court. *Held*:

1. Although the board erred in affirming the 2019 decision of the commissioner on the basis of collateral estoppel, it properly applied, in the alternative, the law of the case doctrine and, thus, properly affirmed the decision of the commissioner that the plaintiff had sustained a compensable injury and was entitled to workers' compensation benefits.

2. The board properly affirmed the commissioner's determination that jurisdiction over the plaintiff's claim existed.

    a. The board's decision affirming the commissioner's finding that the requirements of the medical care exception in § 31-294c (c) had been satisfied resulted from a correct application of the law to the subordinate facts and the inferences reasonably drawn from them: testimony and evidence credited by the commissioner showed that, after the car had fallen on the plaintiff and he could not feel his legs, he was placed on a wet mattress by M, who then directed an agent of R Co. to drive the plaintiff to a hospital, where he received medical treatment; moreover, any claim by R Co. and M that they lacked notice that the plaintiff suffered an injury was belied by the record and the fact that, within one year following the incident, M provided the plaintiff with money to purchase an electric wheelchair, purchased and/or provided a wheelchair accessible ramp for the plaintiff's home, and paid him $500 per week subsequent to his injury.

    b. This court declined to consider R Co. and M's claim that the board improperly affirmed the commissioner's finding that the plaintiff was an employee of R Co. and not an independent contractor because R Co. and M failed to file a motion to correct that factual finding in the commissioner's 2017 decision; moreover, the board's determination that the commissioner's finding of jurisdiction was proper was based on a correct application of the law to the subordinate facts found by the commissioner relating to the employment relationship of the parties, including that the plaintiff was an employee of R CO. on the date of the incident that caused his injuries and that he was subject to the direction and control of R Co. and M.

3. The board improperly affirmed the commissioner's findings that the plaintiff was an employee of M, that M was the alter ego of R Co., and that he was jointly and severally liable for the award of benefits to the plaintiff: it was undisputed that the plaintiff never filed a notice of claim alleging that M was his employer, and the commissioner acted beyond the scope of the Workers' Compensation Act (§ 31-275 et seq.) by bringing M into the action in his personal capacity and deciding the issue of whether M, as the principal of the employer of the injured employee, should be held personally accountable for the plaintiff's injuries, as the commissioner was without jurisdiction to pierce the corporate veil of R Co.; moreover, there is a remedy pursuant to statute (§ 31-355 (c)) for the Second Injury Fund to recover amounts paid by the fund, and, in such a civil action, the fund could seek to pierce the corporate veil of R Co.

Argued February 9—officially released May 18, 2021

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Second District finding that the Workers' Compensation Commission had jurisdiction over the plaintiff's claim for workers' compensation benefits, brought to the Compensation Review Board, which affirmed the commissioner's decision; thereafter, the commissioner found that the plaintiff had sustained a compensable injury and awarded, inter alia, certain disability benefits; subsequently, the commissioner denied the motion to correct filed by the defendant and Robert Marion; thereafter, the defendant and Robert Marion appealed to the Compensation Review Board, which affirmed the commissioner's decision, and the defendant and Robert Marion appealed to this court. *Affirmed in part; reversed in part; decision directed.*

*Robert M. Fitzgerald*, for the appellants (defendant and Robert Marion).

*Lori M. Comforti*, for the appellee (plaintiff).

*Patrick G. Finley*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (Second Injury Fund).

*Opinion*

YOUNG, J. This appeal is brought by the defendant employer, R.P.M. Enterprises, Inc. (R.P.M.), and its owner, Robert Marion (Marion), from the decisions of the Compensation Review Board (board) affirming the finding of the Workers' Compensation Commissioner (commissioner) that the Workers' Compensation Commission (commission) had jurisdiction over this matter, and affirming, in part, the findings and award of the commissioner that the plaintiff, Jose DeJesus, had sustained a compensable injury for which he was entitled to temporary total disability benefits and payment for medical bills.[1] Because R.P.M. did not carry workers' compensation insurance, the defendant Second Injury Fund (fund) was cited in as a party to the action pursuant to General Statutes § 31-355.[2] On appeal, R.P.M. and Marion claim that the board erred in affirming (1) the commissioner's rulings that the plaintiff's claim for benefits was not time barred pursuant to General Statutes § 31-294c[3] and that the plaintiff was an employee of R.P.M. and/or Marion, (2) the award of compensation by the commissioner against Marion at the request of the fund when no claim was brought against Marion, and (3) the decision of the commissioner that he had jurisdiction to make a finding that R.P.M. and Marion were the same entity for the purposes of piercing the corporate veil. We reverse, in part, the decisions of the board.

The following facts, as found by the commissioner, and procedural history are relevant to this appeal. Because the issue of lack of jurisdiction was raised by R.P.M. at the beginning of the proceedings,[4] the commissioner agreed to bifurcate that issue and to decide the jurisdictional issue first, after which an additional hearing would be held to decide the remaining issues. Formal hearings regarding the issue of jurisdiction were held on April 12, September 27 and November 22, 2016. In a decision dated June 16, 2017 (2017 decision), the commissioner found that the plaintiff was born in Puerto Rico and came to the mainland when he was three or four years old. He was hired by Russell Adams, the office manager for R.P.M., which operates a junkyard, to work Monday through Saturday. For one year prior to the date of his injury, he earned $100 for a full day of work, and $50 for his work on Saturdays, and he had received a $600 Christmas bonus for many years. His work duties included taking parts off cars, changing oil, fixing the loader, changing tires and picking up cars. The plaintiff also performed work at properties owned by Marion such as cutting grass or shoveling snow. The tools he used to perform his work for R.P.M. were owned by R.P.M., and his work activities at R.P.M. were directed by Adams, Marion, or Marion's son, Robert Marion II (Bobby).[5] If the plaintiff did not do something the right way, Adams would direct him how to do it

correctly.

The plaintiff testified before the commissioner that, on December 9, 2013, he was directed by Adams and Bobby "to work taking off parts and have cars ready," and when that task was completed, he was directed by Bobby to remove the converter on a car that was propped up on its side by a pipe. When the plaintiff was kneeling on the ground facing the car, trying to cut off the bottom bolts, the car fell on his shoulders and the back of his head. He testified that he felt the car "crushing him down and . . . felt something in his back cracking and breaking . . . ." After Adams and Bobby lifted the car off of the plaintiff, he fell on his back and could not feel his legs. The plaintiff further testified that, at that time, Marion "came around the corner and asked what happened," and the plaintiff told him that the car fell on him. Marion then told Adams to get a piece of wood so that he could lay the plaintiff on it, but, when one could not be located, the plaintiff was placed on a wet mattress. Thereafter, at Marion's direction, Adams drove the plaintiff to a hospital in his van, with Bobby following behind them. Neither Adams nor Bobby went into the hospital with the plaintiff.

Marion testified before the commissioner that he had no knowledge that the plaintiff was injured at R.P.M. on December 9, 2013, that he was not at the job location that day, and that he was "pretty sure" that the business was closed on that day. Marion testified further that he was the owner of R.P.M. from 1984 until at least November 22, 2016, that the plaintiff was an independent contractor and not an employee of R.P.M., that R.P.M. had one bank account, and that he was the only person authorized to sign checks from that account. Marion did acknowledge that, following the accident that caused the plaintiff's injuries, he paid the plaintiff $500 per week, purchased an electric wheelchair for the plaintiff, and built a wheelchair ramp at the plaintiff's home to accommodate the plaintiff's wheelchair.

In addressing the question of jurisdiction, the commissioner found that the plaintiff did not file a written notice of claim within one year of the date of injury as required by § 31-294c, nor did he request a hearing within that time period. Instead, the plaintiff filed a Form 30C notice of claim on May 4, 2015, and an amended notice on September 10, 2015. As a result, R.P.M. claimed that the commission lacked jurisdiction over the plaintiff's claim for workers' compensation benefits. The plaintiff countered that an exception to the one year notice requirement applied because, inter alia, R.P.M. and Marion had knowledge of the injury on the date of its occurrence and directed Adams, their agent, to transport the plaintiff to the hospital for medical treatment.

On the basis of the testimony and exhibits, the commissioner found the testimony of the plaintiff mostly

credible, despite some discrepancies. In contrast, the commissioner found the testimony of Marion neither credible nor persuasive. Specifically, the commissioner found that R.P.M. and Marion, through their agent, Adams, provided transportation to bring the plaintiff to the hospital on the day of the incident and, thus, that the plaintiff had satisfied the medical care exception to the one year notice requirement set forth in § 31-294c (c), thereby tolling the statute. Furthermore, the commissioner found that the plaintiff was an employee of R.P.M. and/or Marion, and not an independent contractor, because the plaintiff was "subject to specific control and direction" of R.P.M. and/or Marion. Accordingly, because the medical care exception to the one year notice requirement was satisfied, and because an employer-employee relationship existed between the plaintiff and R.P.M. and/or Marion, the commissioner found that the commission had jurisdiction over the matter.

Following the commissioner's determination regarding jurisdiction over the matter, R.P.M. filed a petition for review with the board, which, on November 8, 2018, issued a decision (*DeJesus I*) affirming the commissioner's finding of jurisdiction and determining that it was "supported by sufficient facts and properly applie[d] the pertinent law." After reviewing the findings of the commissioner, the board noted that neither R.P.M. nor Marion filed a motion to correct those findings,[6] which "constrained . . . [the board's] ability to challenge factual findings." The board first addressed and rejected the claim that the commissioner improperly bifurcated the proceeding and decided the jurisdictional claim first. Next, it found no error in the commissioner's decision to allow the fund to appear and litigate issues at the formal hearing, rather than in a collection action, as alleged by R.P.M. and Marion.

In addressing a claim raised by Marion that "he was deprived of due process because the trial commissioner ordered relief against him although he was not originally named as a party in the case," the board, relying on *Mosman* v. *Sikorsky Aircraft Corp.*, No. 4180, CRB 4-00-1 (March 1, 2001), recognized that "a party may be apprised that a given claim is at issue by other means, such as the statements of the parties at trial, the evidence they have introduced, or the papers they have filed." (Internal quotation marks omitted.) The board further stated: "In the present case, we note that Marion . . . was in attendance at the initial session of the formal hearing on April 12, 2016, and his company had retained legal counsel for this hearing. At that formal hearing, counsel for the [f]und specially moved to add Marion . . . to the case in his individual, personal capacity. . . . Counsel for R.P.M. offered no objection.

"We further note that at the September 27, 2016 session of the formal hearing, the trial commissioner indi-

cated on the record that hearing notices had been sent to Marion . . . in his personal capacity, the [f]und had served Marion . . . with a subpoena, counsel for R.P.M. had withdrawn from the case, and Marion . . . (or someone else on his behalf) had sent a text message to the [c]ommission acknowledging the scheduling of the hearing but stating that medical issues would preclude his attendance. . . . Marion . . . attended and extensively testified at the November 22, 2016 hearing, at which the inquiry largely focused on the manner in which Marion . . . managed the finances of R.P.M. Under the totality of the circumstances, we are persuaded that Marion . . . had ample reason to believe he was potentially facing personal liability. . . . As a result, we do not find that the trial commissioner's decision to attribute personal liability to Marion . . . constituted a due process violation." (Citations omitted; internal quotation marks omitted.)

The board then turned to the primary issue of jurisdiction and found that the evidence in the record supported the commissioner's conclusion that the medical care exception in § 31-294c (c) was satisfied. Specifically, the board found that the evidence in the record determined to be reliable by the commissioner supported the finding that R.P.M. and Marion, through their agent, Adams, provided transportation to the plaintiff to the hospital on the date of the incident. Although R.P.M. and Marion claimed that "merely transporting an employee to a hospital is an inadequate basis for establishing that the medical care exception has been satisfied," and that they "lacked actual knowledge of the nature of the injury," the board determined that "[t]he evidence credited by the trial commissioner is utterly inconsistent with th[at] position."

With respect to the finding by the commissioner that the plaintiff had established the existence of an employer-employee relationship, R.P.M. and Marion claimed that the commissioner "should have enforced . . . independent contractor agreements" that they had executed with the plaintiff. The board explained that the determination of employment status is a factual issue that is entitled to "a significant level of deference on review." (Internal quotation marks omitted.) The board concluded that the plaintiff's testimony that R.P.M. and Marion controlled his activities "provided a sufficient basis for the trial commissioner to conclude that an employer-employee relationship existed, notwithstanding the provisions of the independent contractor agreements."

Finally, the board addressed the issue of whether the record contained sufficient evidence to support the decision of the commissioner to pierce the corporate veil and to find Marion responsible in his individual capacity. The board explained that, although it would have been beneficial for the commissioner to have made

specific findings concerning the issue of piercing the corporate veil, the absence of such findings was "harmless error, particularly as there was no motion to correct." Given the testimony on the record showing that Marion would pay the plaintiff in cash and, after the plaintiff's injury, issued checks drawn on R.P.M. to the plaintiff's wife, that the plaintiff worked on property owned by Marion, as well as the home of Marion's mother, and that Marion was the owner of R.P.M., which did not have a separate bank account, paid the plaintiff for the work performed on his personal residence and used the funds of R.P.M. to pay for his personal expenses, the board concluded that "the commissioner reasonably inferred that R.P.M. and Marion . . . were essentially alter egos and, as such, Marion . . . could not rely upon the protection of the corporate veil as a defense against liability."

On March 13, 2019, a formal hearing was held before the commissioner[7] to address the issue of compensability, at which no additional evidence or testimony was presented or entered into the record. Moreover, the parties had agreed that the record of the prior proceedings before the commissioner would be incorporated by reference and constitute the record for purposes of the new hearing concerning compensability. In a decision dated April 23, 2019 (2019 decision), the commissioner found, on the basis of the evidence in the record, that R.P.M. and Marion "were alter egos" and that the plaintiff was their employee on December 9, 2013, when the plaintiff sustained a catastrophic injury to his spinal cord while performing work at his place of employment. Accordingly, the commissioner concluded that the plaintiff's injury, which rendered him permanently and totally disabled, was compensable and that R.P.M and Marion, as alter egos, were jointly and severally liable for the plaintiff's reasonable and necessary medical expenses. R.P.M. and Marion were ordered to pay the plaintiff temporary total disability benefits, to continue to pay for all reasonable and medically necessary medical treatment provided by an authorized treating physician, to reimburse the plaintiff for certain expenses he had incurred, and to pay a civil penalty of $50,000 to the fund for their failure to carry workers' compensation insurance.

Thereafter, R.P.M. and Marion filed a motion to correct, which the commissioner denied, and R.P.M. and Marion filed a petition for review with the board. In a decision dated April 29, 2020 (*DeJesus II*), the board affirmed the decision of the commissioner except with respect to the fine imposed and remanded the matter for a hearing regarding the amount of the fine. The board first noted that many of the issues raised on appeal by R.P.M. and Marion were merely rearticulations of issues heard and decided in *DeJesus I*. The board, thus, agreed with the plaintiff's claim that R.P.M. and Marion were barred, under the doctrine of collateral

estoppel, from challenging issues that were heard and decided in the 2017 decision of the commissioner and by the board in *DeJesus I*. In making that determination the board explained that, although a party aggrieved by a decision of the board has the right to file an appeal, if no appeal is taken, "the decision of the . . . [b]oard is final within twenty days. Any issues heard and decided in *DeJesus I*, for which [R.P.M. and Marion] believed appellate review was appropriate, should have been appealed and presented to our Appellate Court. Therefore, [R.P.M. and Marion] are collaterally estopped from review of any issues previously heard and decided in *DeJesus I*." The board also found that the record supported the finding that the plaintiff sustained a compensable injury. R.P.M. and Marion have appealed to this court challenging the board's decisions in *DeJesus I* and *DeJesus II*. Additional facts and procedural history will be set forth as necessary.

We first set forth our standard of review applicable to workers' compensation appeals. "The commissioner has the power and duty, as the trier of fact, to determine the facts . . . and [n]either the . . . board nor this court has the power to retry the facts. . . . The conclusions drawn by [the commissioner] from the facts found [also] must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Woodbury-Correa* v. *Reflexite Corp.*, 190 Conn. App. 623, 627, 212 A.3d 252 (2019). "The board sits as an appellate tribunal reviewing the decision of the commissioner. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's [decision]. . . . Our scope of review of [the] actions of the [board] is [similarly] . . . limited. . . . [However] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Internal quotation marks omitted.) *Dombrowski* v. *New Haven*, 194 Conn. App. 739, 748, 222 A.3d 533 (2019), cert. denied, 335 Conn. 908, 227 A.3d 1039 (2020).

"[Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and the board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the

construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . Furthermore, [i]t is well established that, in resolving issues of statutory construction under the [Workers' Compensation Act (act), General Statutes § 31-275 et seq.], we are mindful that the act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Internal quotation marks omitted.) *Woodbury-Correa* v. *Reflexite Corp.*, supra, 190 Conn. App. 627–28; see also *Gould* v. *Stamford*, 331 Conn. 289, 303–304, 203 A.3d 525 (2019).

I

Before we address the issues raised by R.P.M. and Marion on appeal, we must first address the issue raised by the plaintiff that R.P.M. and Marion are precluded, under the doctrine of collateral estoppel, from raising issues on appeal that previously were heard and decided in *DeJesus I*, including issues concerning the commissioner's finding that the plaintiff was an employee of R.P.M. and/or Marion, and his determination that the medical care exception in § 31-294c (c) applied and excused the plaintiff's failure to file a timely notice of claim within one year from the date of his injury. The plaintiff raised his collateral estoppel claim before the board in *DeJesus II*, which agreed with the plaintiff and determined that R.P.M. and Marion were "collaterally estopped from review of any issues previously heard and decided in *DeJesus I*." We disagree and conclude that collateral estoppel is not applicable under the circumstances of this case.

The following additional facts are necessary to this claim. At the beginning of the formal hearing held on April 12, 2016, R.P.M. raised an issue regarding the commissioner's jurisdiction over the matter. Thereafter, the parties agreed to bifurcate the proceedings and to have the commissioner decide the issue of jurisdiction first. After the commissioner issued his 2017 decision finding jurisdiction, R.P.M. and Marion[8] appealed to the board, which affirmed the commissioner's 2017 decision in *DeJesus I*. A formal hearing was then held on March 13, 2019, before the commissioner for a determination of the remaining issues, including whether the plaintiff sustained a compensable injury and, if so, the amount of compensation and benefits to which the plaintiff was entitled. The commissioner issued a find-

ing and award on April 23, 2019, from which R.P.M. and Marion appealed to the board, which affirmed the commissioner's decision in *DeJesus II*. In *DeJesus II*, the board agreed with the plaintiff that R.P.M. and Marion were precluded by the doctrine of collateral estoppel from seeking review of issues that were determined in the 2017 decision of the commissioner and affirmed by the board in *DeJesus I*.

"Whether the [board] properly applied the doctrine of collateral estoppel is a question of law for which our review is plenary. . . . The fundamental principles underlying the doctrine are well established. Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined *in a prior action* between the same parties upon a different claim." (Emphasis added; internal quotation marks omitted.) *Rinaldi* v. *Enfield*, 82 Conn. App. 505, 516, 844 A.2d 949 (2004). "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 773, 770 A.2d 1 (2001). "[A] valid and final adjudicative determination by an administrative tribunal has the same effects under the [rule] of . . . [collateral estoppel], subject to the same exceptions and qualifications, as a judgment of a court." (Internal quotation marks omitted.) *Sellers* v. *Sellers Garage, Inc.*, 110 Conn. App. 110, 115, 954 A.2d 235 (2008).

The crux of the plaintiff's claim, with which the board agreed, is that when R.P.M. and Marion failed to appeal to this court following the decision in *DeJesus I*, that decision of the board became final, and, thus, R.P.M. and Marion were collaterally estopped from raising any issues previously heard and decided in *DeJesus I*. In support of that claim, the plaintiff relies on General Statutes § 31-301a, which provides in relevant part: "[A]ny decision of the . . . [b]oard, in the absence of an appeal therefrom, shall become final after a period of twenty days has expired from the issuance of notice of the rendition of the judgment or decision." He also relies on General Statutes § 31-301b, which provides in relevant part: "Any party aggrieved by the decision of the . . . [b]oard upon any question or questions of law arising in the proceedings *may* appeal the decision of the . . . [board] to the Appellate Court, whether or not the decision is a final decision . . . ." (Emphasis added.)

In their reply brief, R.P.M. and Marion claim that, under the procedural posture of this case, they are not precluded by collateral estoppel from raising claims

related to issues that were decided in *DeJesus I*. They claim that, because the commissioner's 2017 decision did not include any findings regarding whether the plaintiff's injury arose out of or in the course of employment, or what benefits, if any, were due, neither R.P.M. nor Marion was found responsible to pay workers' compensation benefits to the plaintiff at the time *DeJesus I* was decided; accordingly, they had no reason to appeal to this court at that time. In light of the permissive language in § 31-301b stating that a party "may" appeal the decision of the board, and the absence in that statute of mandatory language requiring that an appeal *must* be filed, they claim that they had the choice to see the case through to its conclusion and then to file an appeal to resolve all of the issues in the case.

The commissioner's 2019 decision indicates that "[n]o additional evidence or testimony was entered into the record on March 13, 2019. The parties agreed that the record in the prior proceedings before [the] [c]ommissioner . . . would be the record for purposes of the findings made herein and would be incorporated by reference." At oral argument before this court, the parties were asked whether the record shows that R.P.M. and Marion could introduce additional evidence at the March 13 hearing concerning the lack of an employer-employee relationship and the applicability of the medical care exception. The plaintiff's counsel responded that there was an opportunity for anyone to present additional evidence but no one actually did present additional evidence, and that R.P.M. and Marion thus could have presented evidence but did not do so.

We conclude that collateral estoppel does not apply to this case. Collateral estoppel, or issue preclusion, applies to prevent the relitigation of an issue when that issue was actually litigated and necessarily determined *in a prior action* between the same parties. See *Rinaldi* v. *Enfield*, supra, 82 Conn. App. 516. The proceedings in the present case, however, were all part of the same action. The commissioner simply bifurcated the proceedings and decided the issue of jurisdiction first, with the issue of compensability to be decided at a subsequent hearing, at which the parties could present additional evidence.

The board reasoned in *DeJesus II* that § 31-301b, when read together with § 31-301a, indicates that "an aggrieved party has the right to file an appeal but, if an appeal is not taken, the decision of the . . . [b]oard is final within twenty days." As a matter of statutory interpretation, however, it would lead to an absurd, unworkable result to apply that statute in such a manner under the circumstances here, where the proceedings had been bifurcated. Because the commissioner, in 2017, first made a finding regarding jurisdiction over the matter and, following a separate hearing at which the parties could present additional evidence, would

determine if the plaintiff's injury was compensable, the proceedings were ongoing at the time the board heard the appeal of the jurisdictional issue in *DeJesus I*. "[B]ecause the existence of a final judgment is a jurisdictional prerequisite to an appeal"; (internal quotation marks omitted) *Levarge* v. *General Dynamics Corp.*, 282 Conn. 386, 390, 920 A.2d 996 (2007); an appeal to this court at that time would have been subject to dismissal. See id., 390–91; see also *Dechio* v. *Raymark Industries, Inc.*, 299 Conn. 376, 399–400, 10 A.3d 20 (2010) (explaining that there is a final judgment requirement "with respect to appeals from the board to the Appellate Court pursuant to . . . § 31-301b, notwithstanding the lack of a final judgment requirement in the text of that statute"). Therefore, under the circumstances here, the failure of R.P.M. and Marion to appeal to this court from the decision in *DeJesus I* did not render that decision final as to the issues raised therein.

Furthermore, neither the parties nor the commissioner, at the March 13, 2019 hearing, took the position that R.P.M. and Marion were collaterally estopped from presenting additional evidence on the jurisdictional issues. To the contrary, the commissioner specifically asked them if they wanted to present additional evidence and they declined to do so. If R.P.M. and Marion had presented additional evidence at the March 13, 2019 hearing, the commissioner would have had to make new findings that could have been challenged on an appeal to the board, which further supports our conclusion that there was no requirement for R.P.M. and Marion to have filed an appeal to this court from the decision of the board in *DeJesus I*. See *Pokorny* v. *Getta's Garage*, 219 Conn. 439, 446–48, 447 n.8, 594 A.2d 446 (1991) (rejecting claim that, because issues of compensability and amount of plaintiff's medical bills were not appealed to board, decision of commissioner was final as to those issues, and concluding that, because language of commissioner's decision gave parties right to petition for additional hearings on issue of defendants' obligation to pay for plaintiff's medical bills, defendants were not limited to appealing decision concerning payment of medical bills within statutory time limitation of General Statutes § 31-300, which provides that decisions of commissioner not appealed within twenty days "shall be final"); see generally *Levarge* v. *General Dynamics Corp.*, supra, 282 Conn. 390 (when further proceedings before commissioner are necessary following remand from board, "if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and the taking of additional evidence, the appeal is premature and must be dismissed" (internal quotation marks omitted)).

Because the plaintiff bases his collateral estoppel claim on his assertion that R.P.M. and Marion should

have appealed to this court following the decision in *DeJesus I*, which we have rejected, the claim fails. Accordingly, the board's determination that R.P.M. and Marion were collaterally estopped from raising issues during the appeal in *DeJesus II* related to issues that were heard and decided in *DeJesus I* resulted from an incorrect application of the law to the facts of the case.

Nevertheless, in *DeJesus II* the board also stated: "Assuming for the sake of argument that the doctrine of issue preclusion is not appropriate . . . we believe that the doctrine of the law of the case applies to the findings and conclusions set out in the 2017 finding and relied on in the [2019] findings and conclusions at issue here." The board found the doctrine of the law of the case particularly relevant to the 2017 finding of the commissioner that the plaintiff was an employee of R.P.M. on December 9, 2013, when he was injured while performing mechanical work on a car at R.P.M.'s place of business. Accordingly, the board concluded that the evidentiary record before the commissioner in 2017, which was the same as the one before the commissioner in 2019, contained evidence supporting the conclusion that the plaintiff sustained a compensable injury that arose out of and in the course of his employment with R.P.M.

"The application of the law of the case doctrine involves a question of law, over which our review is plenary. . . . The law of the case doctrine expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . . [When] a matter has previously been ruled [on] interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if . . . [a judge] becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Citations omitted; internal quotation marks omitted.) *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 322, 63 A.3d 896 (2013); see also *Bowman* v. *Jack's Auto Sales*, 54 Conn. App. 289, 290–91, 734 A.2d 1036 (1999) (affirming decision of board applying law of case doctrine to award of benefits by commissioner).

We conclude that the law of the case doctrine, rather than collateral estoppel, is applicable to this case. Although the board erred in applying collateral estoppel in its decision, the board, nevertheless, properly applied the law of the case doctrine, in the alternative, and affirmed the 2019 decision of the commissioner that

the plaintiff had sustained a compensable injury for which he was entitled to workers' compensation benefits. We find no error in that decision of the board.

## II

R.P.M. and Marion claim that the board improperly affirmed the 2017 decision of the commissioner finding that the commission had jurisdiction over the plaintiff's claim for workers' compensation benefits. Specifically, R.P.M. and Marion challenge the commissioner's (1) determination that the plaintiff's claim for benefits was not time barred under § 31-294c and that the plaintiff satisfied the medical care exception set forth in § 31-294c (c), which excused the plaintiff's failure to file a timely written notice of claim, and (2) finding the plaintiff was an employee, and not an independent contractor, of R.P.M.[9] We conclude that the board properly affirmed the commissioner's determination that jurisdiction over the plaintiff's claim existed and address each of these claims in turn.

We first note that our review of the claims of R.P.M. and Marion is limited by the procedural posture of this case. Because R.P.M. and Marion did not file a motion to correct[10] the factual findings that formed the basis for the commissioner's determination of jurisdiction in the commissioner's 2017 decision,[11] they cannot now challenge those factual findings. See *Sellers* v. *Sellers Garage, Inc.*, 80 Conn. App. 15, 19, 832 A.2d 679, cert. denied, 267 Conn. 904, 838 A.2d 210 (2003); see also Regs., Conn. State Agencies § 31-301-4. "A party seeking to challenge a finding of the commissioner as incorrect or incomplete must first do so by filing a motion to correct the challenged findings." *Melendez* v. *Fresh Start General Remodeling & Contracting, LLC*, 180 Conn. App. 355, 367, 183 A.3d 670 (2018). When a party fails to do so, however, the board must "accept the validity of the facts found by the trial commissioner and its review [is] limited to how the trial commissioner applied the law." *Conroy* v. *Stamford*, 161 Conn. App. 691, 702, 129 A.3d 137 (2015), cert. denied, 320 Conn. 917, 131 A.3d 1154 (2016). Therefore, our review on appeal is limited to a determination of "whether the board's conclusions on the basis of those facts result[ed] from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . In other words, [t]hese conclusions must stand unless they could not reasonably or logically be reached on the subordinate facts." (Internal quotation marks omitted.) *Samaoya* v. *Gallagher*, 102 Conn. App. 670, 675, 926 A.2d 1052 (2007).

### A

R.P.M. and Marion challenge the commissioner's determination that the plaintiff's claims were not time barred under § 31-294c. Specifically, they claim that

there was no finding or proof that they furnished medical care with the knowledge that it was exposing them to liability under the act, and that the commissioner's finding that Adams provided transportation to the plaintiff to the hospital on the date of the incident was not sufficient to satisfy the medical care exception. We disagree.

We first set forth our standard of review and the general principles that guide our analysis of this claim. Because this claim challenges the commissioner's application of the law governing the medical care exception and not the underlying facts found by the commissioner in support of that determination, we must determine whether the board's conclusion that the commissioner properly applied the law "result[ed] from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) Id.

Subject matter jurisdiction "is the power . . . to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. . . . This concept, however, is not limited to courts. Administrative agencies [such as the commission] . . . are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power . . . . [A] determination regarding [an agency's] subject matter jurisdiction is a question of law . . . ." (Citations omitted; internal quotation marks omitted.) *Marroquin* v. *F. Monarca Masonry*, 121 Conn. App. 400, 406–407, 994 A.2d 727 (2010). "The existence of an employer-employee relationship . . . and the proper initiation of a claim in the first instance under § 31-294c . . . are jurisdictional facts." (Citations omitted.) *Callender* v. *Reflexite Corp.*, 137 Conn. App. 324, 335, 49 A.3d 211, cert. granted on other grounds, 307 Conn. 915, 54 A.3d 179 (2012) (appeal withdrawn September 25, 2013).

Section 31-294c (a) provides in relevant part that "[n]o proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident . . . ." "[T]he written notice intended is one which will reasonably inform the employer that the employee is claiming or proposes to claim compensation under the . . . [a]ct." (Internal quotation marks omitted.) *Pernacchio* v. *New Haven*, 63 Conn. App. 570, 575, 776 A.2d 1190 (2001). "Written notice of the injury within one year is necessary to give the commissioner jurisdiction to hear the claim unless the case falls within one of the exceptions" set forth in subsection (c) of § 31-294c. *Gesmundo* v. *Bush*, 133 Conn. 607, 611, 53 A.2d 392 (1947). Under those exceptions, the failure to provide a timely notice

of a claim is not a bar to proceedings if there has been "a timely hearing or a written request for a hearing or an assignment for a hearing . . . the timely submission of a voluntary agreement . . . or . . . the furnishing of appropriate medical care by the employer to the employee for the respective work-related injury." (Citations omitted; internal quotation marks omitted.) *Izikson* v. *Protein Science Corp.*, 156 Conn. App. 700, 708, 115 A.3d 55 (2015); see also General Statutes § 31-294c (c).

The present case involves the medical care exception to the one year notice of claim requirement set forth in § 31-294c (c), which provides in relevant part that no defect in a notice of claim shall be a bar to the maintenance of proceedings "if within the applicable period an employee has been furnished, for the injury with respect which compensation is claimed, with medical or surgical care . . . ." "The exception [in § 31-294c (c) to the notice requirement] is, no doubt, based upon the fact that if the employer furnishes medical treatment he must know that an injury has been suffered which at least may be the basis of such a claim."[12] *Gesmundo* v. *Bush*, supra, 133 Conn. 612; see also *Pernacchio* v. *New Haven*, supra, 63 Conn. App. 576–77. "Any interpretation of the scope of § 31-294c (c), accordingly, must be consistent with the principle that the employer's provision of medical care demonstrates that it was on notice that the claimant had suffered a compensable injury." *Carter* v. *Clinton*, 304 Conn. 571, 580, 41 A.3d 296 (2012). The burden is on the claimant to demonstrate that the medical care exception applies. See id., 579.

In *Gesmundo* v. *Bush*, supra, 133 Conn. 611–13, our Supreme Court addressed the applicability of the medical care exception. In that case, an employee of the defendant employer sustained an injury and reported it to the defendant's superintendent. Id., 612. The superintendent then sent the employee to a doctor, who provided medical care to injured employees of the defendant. Id. The commissioner found that "the superintendent had authority to take that action," and that "[t]he act of the superintendent was in effect the act of the employer." Id. Our Supreme Court determined that the doctor's examination and "giving of instructions to the plaintiff constituted 'medical treatment' as those words are used in the statute. To 'furnish' means to 'provide' or 'supply.' Webster's New International Dictionary (2d Ed.). That the plaintiff saw fit to pay the doctor does not alter the situation; it is the fact that the defendant, through its superintendent, made provision for medical treatment that makes unnecessary the formal notice. The commissioner could properly hold that the defendant furnished such treatment within the meaning of the exception in the statute." *Gesmundo* v. *Bush*, supra, 612–13.

Likewise, in *Pernacchio* v. *New Haven*, supra, 63 Conn. App. 572–73, the plaintiff firefighter filed a claim against his employer, the city of New Haven, for heart and hypertension benefits following an incident in which he experienced dizziness, light-headedness, and nausea at the firehouse. In connection with that incident, a paramedic assigned to an emergency medical response unit that was stationed at the firehouse responded to the plaintiff's request for assistance. Id., 572. The paramedic tested the plaintiff's blood pressure and obtained a high reading, called for an emergency unit to transport the plaintiff to the hospital, and remained in contact with medical staff at the hospital while the plaintiff was being transported there, where the plaintiff underwent testing. Id.

On appeal to this court in *Pernacchio*, the defendant argued that "the plaintiff's transportation to the hospital by the defendant's ambulance service, which was staffed by the defendant's emergency medical technicians, who monitored the plaintiff's blood pressure and also remained in contact with the hospital until the ambulance arrived there, [did] not constitute providing 'a competent physician or surgeon to attend the injured employee' or furnishing 'any medical and surgical aid or hospital and nursing service . . . as the physician or surgeon deems reasonable or necessary' as required by [General Statutes] § 31-294d." Id., 577. This court agreed with "the commissioner and the board that the defendant had notice of the blood pressure incident because the plaintiff was transported to the hospital in an ambulance staffed with the defendant's fire department paramedics, who monitored his condition on the way to the hospital, and through [an] investigative report of the defendant's workers' compensation division." Id. We further explained that whether "the ride in the ambulance while attended by paramedics qualifies as a medical service, the commissioner also found that the plaintiff underwent a series of tests at the hospital for which the hospital submitted a bill . . . [which was] an obligation of the defendant. It can hardly be disputed that the tests performed by the hospital were medical services." Id. Accordingly, we concluded that the medical care exception in § 31-294c (c) applied "because the defendant, immediately after the accident, furnished the plaintiff with medical and hospital care . . . ." Id., 577–78.

In the present case, the commissioner found, in his 2017 decision, that R.P.M. and Marion, through their agent, Adams, provided the plaintiff with transportation to the hospital immediately following the incident. On the appeal to the board in *DeJesus I*, the board determined that the commissioner's finding that the requirements for the medical care exception had been met was supported by the evidence in the record, which included the plaintiff's detailed testimony regarding the

events that had transpired on the date of the incident, as well as medical records from the hospital indicating that the plaintiff had been driven to the hospital by a friend because he could not move. With respect to the claim of R.P.M. and Marion that "merely transporting the plaintiff to the hospital" was insufficient to establish that the requirements of the medical care exception have been satisfied, and that "they lacked actual knowledge of the nature of the injury," the board stated: "The evidence credited by the trial commissioner is utterly inconsistent with th[at] position." We find no error in the board's conclusion.

This court has stated: "In the event that a representative or agent of the employer, authorized to send the employee to a physician, does so, that constitutes furnishing medical treatment for purposes of the exception. . . . It is clear that the [employer was] not ignorant of the injury, and [did] not claim to be prejudiced in any way. Even if the employer did not pay for the medical treatment furnished by a physician selected by him, he has 'furnished' such treatment within the meaning of the statute if he has sent the claimant for medical treatment, thereby authorizing it." (Citation omitted.) *Infante* v. *Mansfield Construction Co.*, 47 Conn. App. 530, 535–36, 706 A.2d 984 (1998). In the present case, the testimony and evidence credited by the commissioner show that, after the car fell on the plaintiff and he could not feel his legs, the plaintiff was placed on a wet mattress by Marion, who then directed Adams to drive the plaintiff to a hospital, where he received medical treatment. Under these circumstances, R.P.M. and Marion can hardly claim a lack of notice that the plaintiff suffered a compensable injury, and any claim to the contrary is belied by the record and the facts that, within one year following the incident, Marion provided the plaintiff with money to purchase an electric wheelchair, purchased and/or provided a wheelchair accessible ramp for the plaintiff's home, and paid him $500 per week subsequent to his injury.[13] The board's decision affirming the commissioner's finding that the requirements of the medical care exception have been satisfied resulted from a correct application of the law to the subordinate facts and the inferences reasonably drawn from them. See *Mankus* v. *Mankus*, 107 Conn. App. 585, 592, 946 A.2d 259, cert. denied, 288 Conn. 904, 953 A.2d 649 (2008).

B

R.P.M. and Marion next claim that the board improperly affirmed the commissioner's finding that the plaintiff was an employee, and not an independent contractor, of R.P.M. To the extent that R.P.M. and Marion are challenging the commissioner's factual finding that the plaintiff was an employee of R.P.M., we decline to consider this claim as a result of the failure of R.P.M. and Marion to file a motion to correct that factual finding

in the commissioner's 2017 decision. See *Melendez* v. *Fresh Start General Remodeling & Contracting, LLC*, supra, 180 Conn. App. 368 (declining to consider claim that board improperly affirmed finding of commissioner that claimant was employee where party challenging finding did not file motion to correct).

Moreover, to the extent that R.P.M. and Marion are challenging the commissioner's determination that jurisdiction exists, we conclude that the board's determination that the commissioner's finding of jurisdiction was proper was based on a correct application of the law to the subordinate facts found by the commissioner relating to the employment relationship of the parties.

"A jurisdictional prerequisite to the applicability of the act is the existence of an employer-employee relationship." *Bugryn* v. *State*, 97 Conn. App. 324, 328, 904 A.2d 269, cert. denied, 280 Conn. 929, 909 A.2d 523 (2006). "The determination of the status of an individual as an independent contractor or an employee is often difficult . . . and, in the absence of controlling circumstances, is a question of fact." (Internal quotation marks omitted.) *Rodriguez* v. *E.D. Construction, Inc.*, 126 Conn. App. 717, 727, 12 A.3d 603, cert. denied, 301 Conn. 904, 17 A.3d 1046 (2011). "Our courts have long recognized that independent contractors are not within the coverage of the . . . [a]ct. . . . The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work. . . . It is the totality of the evidence that determines whether a worker is an employee under the act, not subordinate factual findings that, if viewed in isolation, might have supported a different determination. . . . For purposes of workers' compensation, an independent contractor is defined as one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work." (Citations omitted; internal quotation marks omitted.) Id., 728. In other words, "[o]ne is an employee of another when he renders a service for the other and when what he agrees to do, or is directed to do, is subject to the will of the other in the mode and manner in which the service is to be done and in the means to be employed in its accomplishment as well as in the result to be attained. . . . The controlling consideration in the determination of whether the relationship of master and servant exists or that of independent contractor exists is: Has the employer the general authority to direct what shall be done and when and how it shall be done—the right of general control of the work?" (Emphasis omitted; internal quotation marks omitted.) *Compassionate Care, Inc.* v. *Travelers Indemnity Co.*, 147 Conn. App. 380, 391, 83 A.3d 647 (2013).

Our Supreme Court has stated that "[i]t is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or his agent." (Internal quotation marks omitted.) *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 697, 651 A.2d 1286 (1995). Moreover, "the fact that a worker did not have any significant investment in the materials or tools necessary to perform the job and that the necessary equipment or materials were furnished by the employer are factors that weigh in favor of a determination that [an employer-employee] relationship [exists] . . . and not that of an independent contractor." *Nationwide Mutual Ins. Co.* v. *Allen*, 83 Conn. App. 526, 536, 850 A.2d 1047, cert. denied, 271 Conn. 907, 859 A.2d 562 (2004).

In the present case, the commissioner found, on the basis of the totality of the evidence, that the plaintiff was an employee of R.P.M. on the date of the incident that caused his injuries and that he was subject to the specific control and direction of R.P.M. and Marion, its owner.[14] On appeal in *DeJesus I*, the board first noted that employment status involves a factual issue that "is subject to a significant level of review," and stated that it had to "determine whether the testimony of the [plaintiff], deemed credible by the trial commissioner, provided a sufficient basis for the trier's conclusion that [R.P.M. and Marion] exercised a right of general control over the [plaintiff's] work activities." (Internal quotation marks omitted.) The board then summarized the testimony before the commissioner in support of his finding: "The [plaintiff] testified that he was paid cash by [R.P.M. and Marion] and could not leave the premises unless someone gave him a ride. . . . He was not given a Form 1099 at year's end . . . and, on the day of his injury, he was under Adams' direction regarding which tasks to perform. . . . Adams and [Bobby] had set up the car on which the [plaintiff] was working on the date of the injury. . . . The [plaintiff] testified that he did not earn wages working for other employers during the period in which he worked for R.P.M. . . . On cross-examination, the [plaintiff] clarified that he had not worked as a mechanic elsewhere but had earned money performing housework for an uncle. He also participated in unpaid volunteer activities at events at Gillette Stadium. . . . He further testified that he worked a set schedule . . . and he would occasionally travel with Marion . . . or Adams to pick up cars or work at their homes. He indicated that he was paid cash daily by either Marion . . . or Adams . . . and he did not use his own tools when stripping cars at R.P.M." (Citations omitted.) Moreover, the plaintiff also testified before the commissioner that Marion, Adams, and Bobby all directed him with regard to his work duties and the control over those duties, and that Adams would correct him and direct him how to do something if he did not

do it correctly.

The board concluded in *DeJesus I* that the plaintiff's testimony, which the commissioner deemed more credible, provided a sufficient basis to support the commissioner's finding of an employer-employee relationship between the plaintiff and R.P.M., which formed the basis of the commissioner's finding of jurisdiction. We conclude that the board properly affirmed the commissioner's decision regarding jurisdiction over this matter.

III

Marion next maintains that the commissioner had (1) no jurisdiction to find him liable to pay compensation under the act because the plaintiff "never made a claim for compensation against [Marion]" and (2) "no authority to apply . . . the equitable doctrine of 'piercing the corporate veil' to make him liable for payment of compensation." Therefore, Marion claims that the board improperly affirmed the award of compensation by the commissioner against him at the request of the fund when no claim was brought against him, and when the commissioner had no jurisdiction to make a finding that R.P.M. and Marion were the same entity for the purposes of piercing the corporate veil. Because these issues are related, we address them together.

In support of his claim that the commissioner lacked jurisdiction to enter an order requiring him, personally, to pay workers' compensation benefits to the plaintiff, Marion points to the fact that no notice of claim naming him as an employer had ever been filed. He further argues that the commissioner lacked "subject matter jurisdiction to make a finding that Marion was an alter ego [of R.P.M.] so as to allow him [to] 'pierce the corporate veil' and make an award against a nonparty."[15]

The fund counters that because Marion was added at the onset of the first formal hearing, when he was present and could have objected but failed to do so, he had adequate notice of the issues to be addressed and was not denied due process. The fund also claims that the commissioner had jurisdiction to pierce the corporate veil of R.P.M. and hold Marion personally liable. In support of this assertion, the fund does not cite to any appellate authority in this state governing this issue and, instead, relies on administrative decisions of the board in prior cases. Moreover, at oral argument before this court, the attorney for the fund, after acknowledging that there is no specific statute that permits a commissioner, as the trier of fact, to pierce the corporate veil, argued that this court should consider General Statutes §§ 31-278 and 31-298 as support for the fund's claim, even though the fund did not brief the applicability of those statutes.

The following additional facts are necessary for a resolution of the claim. The amended Form 30C notice

of claim filed by the plaintiff on September 10, 2015, listed only R.P.M. as the plaintiff's employer. On April 12, 2016, the first day of the formal hearing before the commissioner, the attorney for the fund stated to the commissioner that she wanted to "add" Marion "as a respondent, individual, personal capacity." In response, the commissioner asked Marion if he was the owner of R.P.M., to which Marion replied, "Yes." Thereafter, the commissioner stated: "Okay, and I'm adding you, personally, to the notice . . . ." No objection was raised to that statement of the commissioner. It is undisputed that the plaintiff never filed a notice of claim alleging that Marion was his employer

In the list of issues to be determined in the commissioner's 2017 decision, there is no reference to any issue related to whether the plaintiff was an employee of Marion or whether Marion should be held liable in his individual capacity. A review of the transcripts of the three days of hearings held in 2016 reveals questions and testimony related to how Marion ran R.P.M. and his level of control over, and relationship with, the plaintiff, which could be construed to relate to the issue of whether an employer-employee relationship existed between the plaintiff and R.P.M. In fact, the first time we find reference in the record to piercing the corporate veil of R.P.M. is when the fund filed its trial brief on February 24, 2017, after the conclusion of the formal hearings, claiming that the commissioner should pierce the corporate veil of R.P.M. and "Marion should be held liable to [the plaintiff] for any benefits he is awarded."

In the 2017 decision, the commissioner found that the plaintiff was an employee of R.P.M. "and/or" Marion. On the appeal to the board in *DeJesus I*, the board stated: "The final issue for our consideration, having affirmed the trial commissioner's determination that the commission has jurisdiction over the present matter, is whether the evidentiary record provided a sufficient basis for the trial commissioner to 'pierce the corporate veil' and find Marion . . . responsible in an individual capacity. Marion . . . argues that the subordinate facts do not support the commissioner's finding of liability against him in his individual capacity. Although we concede that specific findings by the trial commissioner with regard to piercing the corporate veil would have been beneficial, we deem their absence harmless error, particularly as there was no motion to correct." After reviewing the legal standard and evidence in the record, the board concluded that "the commissioner reasonably inferred that R.P.M. and Marion . . . were essentially alter egos and, as such, Marion . . . could not rely upon the protection of the corporate veil as a defense against liability." In the commissioner's 2019 decision, the commissioner found, on the basis of the record from the prior proceedings, that R.P.M. and Marion "were alter egos" and, as such, they were "jointly and severally liable as to the orders contained [therein]."

In *DeJesus II*, the board did not address this issue in a substantive manner because it found that R.P.M. and Marion were collaterally estopped from raising issues related to the prior proceedings.

We begin by setting forth the relevant standard of review. "Administrative agencies . . . are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power . . . ." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 103 Conn. App. 571, 577, 930 A.2d 739, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007). "[A] determination regarding [an agency's] subject matter jurisdiction is a question of law . . . ." (Internal quotation marks omitted.) Id., 576. Although our scope of review of the actions of the board in a workers' compensation appeal is limited, this court invokes a broader standard of review when a question of law is involved. See *Izikson* v. *Protein Science Corp.*, supra, 156 Conn. App. 707. We, therefore, afford plenary review to this claim. See id.

This court has observed previously that "the workers' compensation commission, like any administrative body, must act strictly within its statutory authority . . . . It cannot modify, abridge, or otherwise change the statutory provisions under which it acquires authority unless the statutes expressly grant it that power. . . . [I]t is settled law that the commissioner's jurisdiction is confined by the [act] and limited by its provisions. . . . The commissioner exercises jurisdiction only under the precise circumstances and in the manner particularly prescribed by the enabling legislation. . . . The parties cannot confer jurisdiction upon the commissioner by agreement, waiver or conduct. . . . The [act] is not triggered by a claimant until he brings himself within its statutory ambit. . . . Although the [act] should be broadly construed to accomplish its humanitarian purpose . . . its remedial purpose cannot transcend its statutorily defined jurisdictional boundaries." (Internal quotation marks omitted.) *Nationwide Mutual Ins. Co.* v. *Allen*, supra, 83 Conn. App. 532; see also *Kuehl* v. *Koskoff*, 182 Conn. App. 505, 524, 190 A.3d 82, cert. denied, 330 Conn. 919, 194 A.3d 289 (2018). Our Supreme Court has stated that a "commissioner's . . . jurisdiction is limited to adjudicating claims *arising under the act*, that is, claims by an injured employee seeking compensation from his [or her] employer for injuries arising out of and in the course of employment." (Emphasis added.) *Stickney* v. *Sunlight Construction, Inc.*, 248 Conn. 754, 762, 730 A.2d 630 (1999). If jurisdiction exists for the commissioner to find Marion liable, personally, as an employer and alter ego of R.P.M., "such authority must be found within the act." *Byrd* v. *Bechtel/Fusco*, 90 Conn. App. 641, 645, 878 A.2d 1162, cert. denied, 276 Conn. 919, 888 A.2d 87 (2005).

It is unclear from the record as to what the commissioner was referring when he stated at the April 12, 2016 formal hearing that he was adding Marion, "personally, to the notice . . . ." Nevertheless, even if we assume, without deciding, that the commissioner intended to and did bring Marion into the case in his personal capacity, we are not aware of, nor have the parties alerted us to, any authority[16] that allows the commissioner to cite into the matter an individual who was not named, or to designate a person or entity as an employer when the employee has not identified that person or entity as his or her employer.[17] The board's analysis of this issue centered on whether Marion's due process rights had been violated, not the issue at hand, namely, whether the commissioner's actions were authorized under the act. Additionally, although Marion did not file a motion to correct the commissioner's finding that the plaintiff was an employee of Marion, that is not fatal to his challenge to that finding on appeal under the circumstances here, where the commissioner lacked jurisdiction to make that finding in the first place. As we have stated previously, "[u]nless the [a]ct gives the [c]ommissioner the right to take jurisdiction over a claim, it cannot be conferred upon [the commissioner] by the parties either by agreement, waiver or conduct." (Internal quotation marks omitted.) *Gamez-Reyes* v. *Biagi*, 136 Conn. App. 258, 269, 44 A.3d 197, cert. denied, 306 Conn. 905, 52 A.3d 731 (2012). The commissioner acted beyond the scope of the act in bringing Marion into the action in his personal capacity and deciding the issue of whether Marion, as the principal of the employer of the injured employee, should be held accountable, personally, for the plaintiff's injuries. Thus, the board's decision affirming the commissioner's finding as to Marion resulted from an incorrect application of the law and was improper.

Likewise, the board's determination that the commissioner properly pierced the corporate veil of R.P.M. and held Marion jointly and severally liable also founders for the same reason. Because this issue has not yet been addressed by the appellate courts of this state, we briefly discuss the general principles that support our determination.

Under the doctrine of piercing the corporate veil, "[c]ourts will . . . disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor. . . . We have affirmed judgments disregarding the corporate entity and imposing individual stockholder liability when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock." (Internal quotation marks omitted.) *Atelier Constantin Popescu, LLC* v. *JC Corp.*,

134 Conn. App. 731, 759, 49 A.3d 1003 (2012). "The concept of piercing the corporate veil is equitable in nature. . . . No hard and fast rule, however, as to the conditions under which the entity may be disregarded can be stated as they vary according to the circumstances of each case. . . . Ordinarily the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice. . . . The improper use of the corporate form is the key to the inquiry, as [i]t is true that courts will disregard legal fictions, including that of a separate corporate entity, when they are used for fraudulent or illegal purposes. Unless something of the kind is proven, however, to do so is to act in opposition to the public policy of the state as expressed in legislation concerning the formation and regulation of corporations." (Internal quotation marks omitted.) Id., 759–60.

Two tests have been recognized for disregarding a corporate structure of a defendant: the instrumentality rule and the identity rule. See *Cohen* v. *Meyers*, 175 Conn. App. 519, 541, 167 A.3d 1157, cert. denied, 327 Conn. 973, 174 A.3d 194 (2017). Under the instrumentality rule, proof of three elements is required: "(1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of [the] plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." (Internal quotation marks omitted.) Id. Pursuant to the identity rule, "[i]f [the] plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Internal quotation marks omitted.) *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 232, 990 A.2d 326 (2010). Moreover, "the fact that a sole stockholder of a corporation is in exclusive control of the company's finances and business practices, standing alone, is an insufficient basis in itself to pierce the corporate veil. While control is a factor, [o]f paramount concern is how the control was used, not that it existed." (Internal quotation marks omitted.) *Cohen* v. *Meyers*, supra, 541–42.

No appellate court of this state has yet determined

whether the commissioner has jurisdiction under the act to determine if the corporate veil of an employer obligated to pay workers' compensation benefits should be pierced. In its brief, the fund cites to administrative decisions of the board that have addressed this issue and determined that a trial commissioner appropriately could pierce the corporate veil of an employer. See *Barbieri* v. *Comfort & Care of Wallingford, Inc.*, No. 5794, CRB 8-12-10 (September 26, 2013); *Diaz* v. *Capital Improvement & Management, LLC*, No. 5616, CRB 1-11-1 (January 12, 2012); *Caus* v. *Hug*, No. 5392, CRB 4-08-11 (January 22, 2010). These decisions, however, do not appear to be time-tested. Appellate courts generally afford deference to an agency's time-tested interpretation of a statute, for example, "but only when the agency has consistently followed its construction over a long period of time . . . ." (Internal quotation marks omitted.) *Marone* v. *Waterbury*, 244 Conn. 1, 9, 707 A.2d 725 (1998). An agency's interpretation is time-tested when it is applied on a consistent basis, to multiple decisions, over an extended period of time. See *Board of Selectmen* v. *Freedom of Information Commission*, 294 Conn. 438, 448, 984 A.2d 748 (2010); see also *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 390 n.18, 709 A.2d 1116 (1998) (four years did not constitute time-tested agency interpretation). Moreover, "[w]hen a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Internal quotation marks omitted.) *Marone* v. *Waterbury*, supra, 10. Therefore, we do not defer to the board's determination of this issue and exercise plenary review. See *Dechio* v. *Raymark Industries, Inc.*, supra, 299 Conn. 389.

At oral argument before this court, the attorney for the fund acknowledged that there is no specific statute that expressly provides that the trier of fact can pierce the corporate veil but requested this court to consider §§ 31-278 and 31-298. Specifically, the fund's counsel argued that the wide discretion granted to the commissioner under those statutes permitted the actions of the commissioner in the present case, but he also conceded that the applicability of those statutes was not briefed in the fund's appellate brief. Marion counters that § 31-355 of the act provides a specific mechanism by which the fund can recover moneys paid for benefits in a case where no insurance is involved. He also claims that, if the commissioner is allowed to decide the piercing the corporate veil claim, he would lose his right to a jury trial. See *Sellner* v. *Beechwood Construction Co.*, 176 Conn. 432, 433, 437, 407 A.2d 1026 (1979) (jury returned verdict piercing corporate veil of defendant construction company); see also *American Protein Corp.* v. *AB Volvo*, 844 F.2d 56, 59 (2d Cir.) (rejecting claim that court should have decided piercing of corporate veil

claim and holding that issue of piercing corporate veil "is generally submitted to the jury"), cert. denied, 488 U.S. 852, 109 S. Ct. 136, 102 L. Ed. 2d 109 (1988). We agree with Marion.

"[A] claim must be raised and briefed adequately in a party's principal brief, and . . . the failure to do so constitutes the abandonment of the claim." *State* v. *Elson*, 311 Conn. 726, 766, 91 A.3d 862 (2014). "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.) *Scalora* v. *Scalora*, 189 Conn. App. 703, 735–36, 209 A.3d 1 (2019).

Nevertheless, even if we consider the statutes on which the fund relies, they do not provide a basis for authorizing the commissioner to pierce the corporate veil of R.P.M. Section 31-278, which sets forth the powers and duties of the commissioner, provides in relevant part: "Each commissioner shall, for the purposes of this chapter, have power to summon and examine under oath such witnesses, and may direct the production of, and examine or cause to be produced or examined, such books, records, vouchers, memoranda, documents, letters, contracts or other papers in relation to any matter at issue as he may find proper, and shall have the same powers in reference thereto as are vested in magistrates taking depositions and shall have the power to order depositions pursuant to section 52-148. He shall have power to certify to official acts and shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of this chapter. . . ." Our Supreme Court interpreted that statute in *Stickney* v. *Sunlight Construction, Inc.*, supra, 248 Conn. 762, stating that § 31-278 is "[t]he primary statutory provision establishing the subject matter jurisdiction of the commission," and that "[a] plain reading of [the] language [in § 31-278] suggests that the commissioner's subject matter jurisdiction is limited to adjudicating claims arising under the act, that is, claims by an injured employee seeking compensation from his employer for injuries arising out of and in the course of employment." Thus, "for a commissioner to have jurisdiction over a claim, that claim must fit within the existing jurisdictional provisions of [the act]." (Internal quotation marks omitted.) *Del Toro* v. *Stamford*, 270 Conn. 532, 545–46, 853 A.2d 95 (2004). Our review of the language of § 31-278 demonstrates that the statute does not confer jurisdiction on the commissioner to

pierce the corporate veil of a defendant employer.

Similarly, § 31-298 does not provide support for the fund's claim. That statute, titled "Conduct of hearings," provides in relevant part: "In all cases and hearings under the provisions of this chapter, the commissioner shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry, through oral testimony, deposition testimony or written and printed records, in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter. . . ." Although § 31-298 "grants broad authority to a commissioner to carry out the provisions of the . . . [a]ct"; *Bailey* v. *State*, 65 Conn. App. 592, 604, 783 A.2d 491 (2001); this court has determined that the statute "does not engraft equitable doctrines . . . onto all aspects of the act." *Wiblyi* v. *McDonald's Corp.*, 168 Conn. App. 92, 108, 144 A.3d 530 (2016). Moreover, "[o]ur Supreme Court has interpreted § 31-298 'to cover only the manner in which hearings are conducted.' " Id.

The fund claims in its brief that "[w]hen a business is found to be an employer of a claimant and the issue of piercing the corporate veil of said business has been raised, the commissioner must decide that issue in order to resolve the issue of [an] employer/employee relationship." We disagree. The determination of whether an employer-employee relationship exists is a jurisdictional prerequisite to making an award under the act, whereas the issue of piercing the corporate veil concerns whether the corporate structure of the defendant employer should be disregarded and applies to situations "in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor." (Internal quotation marks omitted.) *Atelier Constantin Popescu, LLC* v. *JC Corp.*, supra, 134 Conn. App. 759. That issue is fundamentally different from establishing the existence of an employer-employee relationship in the first instance.

Our determination is supported by the language of the statutory framework governing the fund. Section 31-355 governs hearings, awards and payments from the fund as a result of an employer's failure to comply with an award, and provides for a civil action against the employer by the fund to seek reimbursement. Specifically, § 31-355 provides in relevant part: "(a) The commissioner shall give notice to the Treasurer of all hearing of matters that may involve payment from the . . . [f]und, and may make an award directing the Treasurer to make payment from the fund.

"(b) When an award of compensation has been made under the provisions of this chapter against an employer who failed, neglected, refused or is unable to pay any type of benefit coming due as a consequence of such

award or any adjustment in compensation required by this chapter, and whose insurer failed, neglected, refused or is unable to pay the compensation, such compensation shall be paid from the . . . [f]und. The commissioner, on a finding of failure or inability to pay compensation, shall give notice to the Treasurer of the award, directing the Treasurer to make payment from the fund. . . .

"(c) The employer and the insurer, if any, shall be liable to the state for any payments made out of the fund in accordance with this section or which the Treasurer has by award become obligated to make from the fund, together with cost of [attorney's] fees as fixed by the court. If reimbursement is not made, or a plan for payment to the fund has not been agreed to by the Treasurer and employer, not later than ninety days after any payment from the fund, the Attorney General shall bring a civil action, in the superior court for the judicial district where the award was made, to recover all amounts paid by the fund pursuant to the award, plus double damages together with reasonable attorney's fees and costs as taxed by the court. . . ."

This court previously has explained: "Although the fund became a part of our workers' compensation statutory scheme during World War II, essentially for the purpose of enticing employers to hire returning disabled war veterans, the legislature has, in the intervening years, altered the fund's statutory parameters. At present, the fund's essential purpose is to provide compensation for an injured [plaintiff] when the employer fails to pay. . . . For the fund to fulfill this purpose, a supplemental order must issue from a commissioner directing the fund to make payment to a plaintiff. Under our workers' compensation statutory framework, the prerequisites to an order [issuing from a commissioner] to the fund to make payment [to a plaintiff] are that: (1) the substantive and procedural requirements of the . . . act have been met; (2) an award against the employer has been entered; and (3) the employer and its insurer have failed to pay. . . . Only when these prerequisites—a finding and award properly entered against an employer and an employer's or insurer's failure to pay—have been satisfied, may a commissioner issue a supplemental order directing the fund to compensate a plaintiff in accordance with . . . § 31-355." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Dechio* v. *Raymark Industries, Inc.*, 114 Conn. App. 58, 60, 968 A.2d 450 (2009), aff'd, 299 Conn. 376, 10 A.3d 20 (2010).

Pursuant to the plain language of § 31-355 (c), not later than ninety days after any payment from the fund, a civil action may be brought by the fund in the Superior Court to recover all amounts paid by the fund pursuant to the award. If the fund brings such an action in connection with the present case, it can raise a claim that the

corporate structure of R.P.M. is a fiction, such that its corporate veil should be pierced and liability for the workers' compensation benefits paid to the plaintiff should rest with Marion, as the alter ego of R.P.M. In such an action, Marion would also be afforded the possibility of a jury trial. See General Statutes § 52-218 ("[u]pon the application of either party, the court may order any issue or issues of fact in any action demanding equitable relief to be tried by a jury of six"). Section 31-355 (c), thus, provides a means by which the fund can address its claim in a separate action.

Accordingly, we conclude that the board properly affirmed the commissioner's determination regarding jurisdiction over the plaintiff's claim seeking worker's compensation benefits for the injuries he sustained while working for R.P.M., as well as the commissioner's findings, made in connection therewith, that the plaintiff was an employee of R.P.M. and that the medical care exception in § 31-294c (c) was satisfied. The board, however, improperly affirmed the commissioner's findings that the plaintiff was an employee of Marion, that Marion was the alter ego of R.P.M., and that he was jointly and severally liable for the award of benefits to the plaintiff, as the commissioner did not have jurisdiction under the act to make an award against Marion or to pierce the corporate veil of R.P.M. and hold Marion liable.

The decisions of the Compensation Review Board are reversed only as to the determinations that Marion could be held liable in his personal capacity and that the commissioner properly pierced the corporate veil of R.P.M., and the case is remanded to the board with direction to remand the case to the commissioner with direction to vacate the finding and award as to Marion; the decisions are affirmed in all other respects.

In this opinion the other judges concurred.

[1] The commissioner also imposed a civil penalty pursuant to General Statutes § 31-288 (c) for the employer's failure to carry workers' compensation insurance. The board remanded the matter to the commissioner with respect to the fine imposed.

[2] General Statutes § 31-355 (b) provides in relevant part: "When an award of compensation has been made under the provisions of this chapter against an employer who failed, neglected, refused or is unable to pay any type of benefit coming due as a consequence of such award or any adjustment in compensation required by this chapter, and whose insurer failed, neglected, refused or is unable to pay the compensation, such compensation shall be paid from the Second Injury Fund. The commissioner, on a finding of failure or inability to pay compensation, shall give notice to the Treasurer of the award, directing the Treasurer to make payment from the fund. . . ."

[3] Subsequent to the plaintiff's injury and the commencement of these proceedings, § 31-294c was amended by No. 16-112, § 1, of the 2016 Public Acts, and by No. 17-141, § 1, of the 2017 Public Acts. Because those amendments added provisions that are not relevant to the claims on appeal, we refer to the current revision of the statute.

[4] Specifically, R.P.M. claimed that, because the plaintiff did not file a notice of claim within one year from the date of his injury and no exceptions to that one year notice requirement applied, the commission lacked jurisdiction over the plaintiff's claim for workers' compensation benefits. R.P.M. also asserted that the plaintiff was an independent contractor, not an employee, of R.P.M., depriving the commission of jurisdiction.

[5] Although, in the decisions of the commissioner and the board, Marion's son is referred to as Robert Marion, Jr., at the formal hearing before the commissioner on November 22, 2016, Marion stated to the plaintiff's counsel that his son's correct name is Robert Marion II. Throughout that hearing, in his testimony Marion referred to his son as Bobby. For clarity, we refer to Marion's son in this opinion as Bobby.

[6] See footnote 8 and part II of this opinion.

[7] We note that the 2017 decision was made by Commissioner Ernie R. Walker, who, thereafter, retired from the commission. Therefore, the 2019 hearing was held before Commissioner Peter C. Mlynarczyk.

[8] Although R.P.M. and Marion did not file a motion to correct the commissioner's factual findings at that time, which limited the scope of review applied by the board to any challenges related to those findings; see *Conroy* v. *Stamford*, 161 Conn. App. 691, 701–702, 129 A.3d 137 (2015), cert. denied, 320 Conn. 917, 131 A.3d 1154 (2016); that issue is separate from the issue of whether, as alleged by the plaintiff in connection with his collateral estoppel claim, R.P.M. and Marion were required to file an appeal to this court from the board's decision in *DeJesus I*. We address the failure of R.P.M. and Marion to file a motion to correct in part II of this opinion.

[9] The commissioner also found that the plaintiff was an employee of Marion. We address the finding as it relates to Marion in part III of this opinion.

[10] Although R.P.M. was represented by counsel at the first formal hearing held on April 12, 2016, that counsel withdrew from the case, and R.P.M. and Marion proceeded as self-represented parties throughout the remainder of the proceedings. We acknowledge that "[i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Although we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Sellers* v. *Sellers Garage, Inc.*, 80 Conn. App. 15, 19 n.2, 832 A.2d 679, cert. denied, 267 Conn. 904, 838 A.2d 210 (2003).

[11] The record does show that R.P.M. and Marion filed a motion to correct the factual findings in the commissioner's 2019 decision, which the commissioner denied. In *DeJesus II*, the board concluded that the commissioner did not err in denying the motion to correct.

[12] In their appellate brief, R.P.M. and Marion cite *Gesmundo* for the proposition that an employer "must know that an injury has been suffered," and claim that because the commissioner made no such express finding, there was no finding on the record that they "furnished medical care within the meaning of the statute." An examination of *Gesmundo*, however, reveals that R.P.M. and Marion have taken that statement out of context. Our review of the full statement of the court in *Gesmundo*—that the exception is based on the fact that "if the employer furnishes medical treatment he must know that an injury has been suffered which at least may be the basis of such a claim"—demonstrates that the court was explaining an inference that can be drawn from an employer's conduct in furnishing medical treatment. *Gesmundo* v. *Bush*, supra, 133 Conn. 612. There is no support in *Gesmundo* for the claim of R.P.M. and Marion that the commissioner had to make an express finding that they furnished medical care knowing that it might subject them to liability under the act.

[13] We also note that the commissioner did not find credible Marion's testimony that he was not present at the time of the plaintiff's injury. We cannot disturb that finding. See *Schiano* v. *Bliss Exterminating Co.*, 57 Conn. App. 406, 415, 750 A.2d 1098 (2000) (commissioner's "authority to find the facts entitles the commissioner to determine the weight of the evidence presented and the credibility of the testimony offered").

[14] R.P.M. and Marion take issue with the fact that the commissioner found that the plaintiff was "subject to specific direction and control" of R.P.M. and Marion, and did not use the specific words "right to control." In essence, they claim that the commissioner did not apply the law correctly. This claim has no merit. Our Supreme Court has held that "[t]he fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the *right to control* the means and method of work." (Emphasis in original; internal quotation marks omitted.) *Hunte* v. *Blumenthal*, 238 Conn. 146, 154, 680 A.2d 1231 (1996). Although courts have referred to this as the right to control test, R.P.M. and Marion have not cited any authority, nor have we found any, that required the commissioner to

use the specific words "right to control." Moreover, this court has determined previously that "[i]t is the totality of the evidence that determines whether a worker is an employee"; *Rodriguez* v. *E.D. Construction, Inc.*, supra, 126 Conn. App. 728; and that the controlling consideration in determining the existence of an employer-employee relationship is whether "the employer [has] the general authority to direct what shall be done and when and how it shall be done . . . ." (Emphasis omitted; internal quotation marks omitted.) *Compassionate Care, Inc.* v. *Travelers Indemnity Co.*, supra, 147 Conn. App. 391. If an employee is subject to the direction and control of his employer, it necessarily follows that the employer has the right to control the actions of the employee while at work. The commissioner's finding that the plaintiff was "subject to specific direction and control" of R.P.M. and Marion, as well as his subordinate findings concerning the nature of the employment relationship between the plaintiff and R.P.M. and Marion, were sufficient for the commissioner to make a determination that the plaintiff was an employee.

[15] In connection with this claim, Marion alleges that there is nothing in the act that permits the fund to decide the identity of a claimant's employer. In light of our determination that the commissioner had no jurisdiction under the act to bring Marion into the case in his personal capacity or to pierce the corporate veil of R.P.M. to hold Marion personally liable for the payment of benefits to the plaintiff, we need not address this claim.

[16] Pursuant to the act, the claimant has the burden of proving certain jurisdictional facts. *Gamez-Reyes* v. *Biagi*, 136 Conn. App. 258, 270, 44 A.3d 197, cert. denied, 306 Conn. 905, 52 A.3d 731 (2012). First, the claimant must properly initiate a claim under § 31-294c by filing a written notice of claim, which may be given to the employer or any commissioner. See id.; see also General Statutes § 31-294c. The standard Form 30C notice of claim form, like the one filed by the plaintiff in the present case, requires information regarding the injured worker, the nature of the injury, and the name and address of the employer from whom the injured worker is seeking benefits. The claimant also "has the burden of proving that he is an employee of *the employer from whom he seeks* compensation." (Emphasis added.) *Gamez-Reyes* v. *Biagi*, supra, 270. Once those jurisdictional facts are established, and if the claimant and his employer fail to reach an agreement concerning compensation under the act, a formal hearing will be held before a commissioner, in which the commissioner will make findings regarding whether there was a work-related injury that arose out of and in the course of the claimant's work for the employer. See id.; see also General Statutes § 31-297.

[17] We recognize that Marion, as the principal and owner of R.P.M., was involved in the proceedings and had notice that the plaintiff was seeking workers' compensation benefits from R.P.M. However, the fact that a principal is on notice that a party is seeking workers' compensation benefits from the principal's business does not necessarily mean that the principal is aware that he or she may be held personally liable for an award of benefits made to an employee of that business. That is especially true where, as here, the principal acted as a self-represented party throughout most of the proceedings, a review of the transcripts of the three days of formal hearings did not reveal any clear statement of a party or the commissioner that the commissioner was being asked to decide whether Marion, in addition to R.P.M., was the plaintiff's employer, and the commissioner did not list Marion's personal liability as an issue in his 2017 decision.